Eddie Charles BROWN, etc.,
Plaintiff-Appellant,

v.

A.J. GERRARD MANUFACTURING
COMPANY, Defendant-Appellee.

No. 81–7792.

United States Court of Appeals,
Eleventh Circuit.

Jan. 17, 1983.

Opinion on Granting of Rehearing En
Banc April 11, 1983.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellant.

Whitmire, Morton & Coleman, Bryant A. Whitmire, Birmingham, Ala., for defendant-appellee.

Before KRAVITCH, HATCHETT and CLARK, Circuit Judges.

HATCHETT, Circuit Judge:

We are requested to determine whether the trial court properly exercised its discretion, in light of present law in this circuit, in deducting unemployment compensation benefits from a Title VII back pay award. While criticizing the law of the circuit, we affirm.

Appellee, A.J. Gerrard Manufacturing Company (Gerrard), discharged appellant, Eddie Charles Brown, in August, 1972. The reasons given for Brown's discharge were excessive absenteeism and failure to report his absence from work. Brown, a black man, believing his termination to result from racial discrimination, filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in August, 1972. Brown amended the charge in November, 1974, adding that the company engaged in classwide racial discrimination against the black employees of the company, and further adding charges of differential terms and conditions of employment based on race. In August, 1975, the EEOC issued findings (1) that Brown and other members of his class were victims of racial discrimination in the terms and conditions of their employment with Gerrard, and (2) that Brown was terminated as a result of his race.

After an unsuccessful attempt by the parties to conciliate the findings of the EEOC, Brown commenced this lawsuit in November, 1976. A trial held in June, 1978, resulted in a judgment for Gerrard. In its judgment for Gerrard, the district court noted that Brown was unemployed for thirty-four weeks following his termination from the company, and that for twenty-six of those weeks Brown had received unemployment compensation at the rate of $37 per week. Deducting $962 (the amount of unemployment compensation received over the twenty-six weeks) from the total amount of Brown's lost wages, the district court noted that Brown had lost $1,968 by reason of his loss of employment.

Brown appealed the judgment to the former Fifth Circuit Court of Appeals. The Fifth Circuit, 643 F.2d 273, reversed the judgment and remanded the case to the district court for determination of damages and attorney's fees. On remand, the district court awarded judgment for $3,074.67 in back pay. The court's award consisted of $2,930 base pay loss for the thirty-four weeks of unemployment minus $962 paid to Brown in unemployment compensation resulting in $1,968. Simple interest of seven

percent was applied to the $1,968 resulting in a sum total award of $3,074.67. The district court based its determination of the back pay award on the original trial court's finding of fact, unreversed on appeal, that $1,968 was the amount of loss to Brown. Brown appeals the deduction of unemployment compensation benefits from his Title VII award.

As a preliminary matter, Gerrard contends, without citation of authority, that Brown is estopped from raising the unemployment compensation deduction issue. Gerrard's argument is that the trial court, in its original proceeding, set out the amount of back pay lost by the plaintiff, and set out the method by which the court arrived at the amount of back pay (through the deduction of unemployment compensation pay to Brown). Brown made no objection to this finding. Because Brown failed to object on the issue of deduction of unemployment compensation monies from the back pay award at the original trial, he is thereby estopped from raising the issue for the first time on appeal.

We reject this argument because Brown is here appealing the judgment in this case which awards him back pay. All factors regarding the back pay award are properly before the court. In the first appeal, the judgment was for Gerrard; no back pay award or other award was due Brown under that judgment. It was not necessary nor logical for Brown to appeal the method of calculating an award which was not due.

The issue before us is whether the deduction of unemployment compensation from the amount of back pay award is within the discretion of the district court, and, if so, whether the district court abused its discretion.

The Fifth Circuit has held that an award of back pay is in the discretion of the trial court in a Title VII action. *Merriweather v. Hercules, Inc.,* 631 F.2d 1161 (5th Cir. 1980). The Fifth Circuit has further held that a deduction from the Title VII back pay award for plaintiff's receipt of unemployment compensation is within the discre-

tion of the trial court. *Merriweather,* 631 F.2d at 1168. Although the Fifth Circuit has determined that unemployment compensation deductions from Title VII back pay awards are within the discretion of the trial court, it has done so without an examination of the intent of Congress.

■ Congress expressly adopted National Labor Relations Act (NLRA) standards for the calculation of Title VII back pay awards. *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 419–20, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). The back pay provision of Title VII was expressly modeled on the back pay provision of the NLRA. *Albermarle,* 422 U.S. at 419, 95 S.Ct. at 2372. The NLRA practice, articulated by the Supreme Court in *National Labor Relations Board v. Gullet Gin,* 340 U.S. 361, 364–65, 71 S.Ct. 337, 339–340, 95 L.Ed. 337 (1950), is that unemployment benefits may not be deducted from back pay awards.[1]

We are cognizant that Title VII expressly allows for the deduction of "interim earnings" from a back pay award. 42 U.S.C.A. § 2000e–5(g). Section 2000e–5(g) states in pertinent part that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." Although the NLRA has no express "interim earnings" deduction language, it does provide for the deduction of back pay monies.[2] The Supreme Court notes in *Gullet Gin* that the National Labor Relations Board practice under section 10(c) of the Act is to deduct "earnings of employees from other employment during the back pay period ... and also sums which they failed without excuse to earn." 340 U.S. at 363, 71 S.Ct. at 339. This language conforms significantly with the "interim earn-

ings" language in section 2000e–5(g) of Title VII, leading this court to the assumption that the interim earnings provision of Title VII was modeled on National Labor Relations Board practice in regard to interim earnings.

We note that the NLRA disallows the deduction of unemployment compensation as interim earnings. *Gullet Gin,* 340 U.S. at 365–66, 71 S.Ct. at 340. Because Title VII back pay deductions are based upon NLRA standards, we must conclude that unemployment compensation payments should not be considered interim earnings under Title VII.

The Fourth Circuit, relying upon *Gullet Gin,* and the rationale set forth herein, has refused to allow the deduction of unemployment compensation from Title VII back pay awards. *EEOC v. Ford Motor Co.,* 645 F.2d 183, 195–96 (4th Cir.), *rev'd on other grounds,* —— U.S. ——, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). Since NLRA standards are to be used in a determination of Title VII back pay awards, and since the Act does not dictate that awards of back pay be affected by the deductions of unemployment compensation from that award, we must conclude that the Fourth Circuit is correct in its ruling regarding back pay awards.

Other courts have addressed similar problems. In *Naton v. Bank of California,* 649 F.2d 691 (9th Cir.1981), the Ninth Circuit, in an action arising under the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621–634, held that unemployment compensation could be deducted from back pay awards given pursuant to the statute. *Naton,* 649 F.2d at 699. The Age Discrimination in Employment Act, however, is not based upon the NLRA, as is Title VII. The Second Circuit, in *Equal Employment Op-*

---

1. A basis of the Supreme Court's decision is its acknowledgement that at the time Congress amended the National Labor Relations Act in 1947, it had been the practice for some time of the National Labor Relations Board to disallow deductions for collateral benefits, such as unemployment compensation. *Gullet Gin,* 340 U.S. at 365, 71 S.Ct. at 340.

2. The National Labor Relations Act, in section 160 of title 29, articulates the back pay remedies for wrongfully discharged parties, stating:

 If upon the preponderance of the testimony taken, the Board shall be of the opinion that any person named in the complaint has en-

 gaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees *with or without* back pay, as will effectuate policies of this subchapter .... [Emphasis added.]

 The Act allows for the deduction of funds which would ordinarily constitute back pay, but does not have a separate "interim earnings" provision, as does Title VII.

portunity Commission v. Enterprise Association Steamfitters, 542 F.2d 579 (2d Cir. 1976), held that public assistance could be deducted from back pay awarded under Title VII. The Second Circuit based its decision upon policy considerations rather than the letter of the law.[3] The Second Circuit stated that it saw "no compelling reason for providing the injured party with double recovery for his lost employment ... and [that the court was] not in the business of redistributing the wealth beyond the goal of making the victim of discrimination whole." Enterprise Association Steamfitters, 542 F.2d at 592. The Supreme Court, however, dealt with such rationale in Gullet Gin, stating:

> To decline to deduct state unemployment compensation benefits in computing back pay is not to make the employees more than whole, as contended by respondent. Since no consideration has been given to collateral losses in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received.
>
> ... Payments of unemployment compensation were not made to the employees by respondent but by the state out of state funds derived from taxation. True, these taxes were paid by employers, and thus to some extent respondent helped to create the fund. However, the payments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the entire state. We think these facts plainly show the benefits to be collateral. It is thus apparent from what we have already said that failure to take them into account in ordering back pay does not make the employees more than "whole" as that phrase has been understood and applied.

340 U.S. at 364, 71 S.Ct. at 339 (citations omitted).

We cannot conclude that Brown will be made more than "whole" if he receives un-

employment compensation from a source independent of his ex-employer. It is not the purpose of Title VII, and the NLRA to reward the discriminatory actions of an employer by allowing the deduction of collateral benefits from that amount of money rightfully owed to the party who suffered discriminatory treatment.

 We believe the correct course of action to be the disallowance of unemployment compensation deductions from Title VII back pay awards. We are, however, bound to follow the opinion of this court's predecessor in Merriweather, as decisions by the former Fifth Circuit filed prior to October 1, 1981, are binding as precedent upon the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206 (1981). Merriweather holds that the decision to deduct unemployment compensation benefits from Title VII back pay awards is within the discretion of the trial court. Merriweather, 631 F.2d at 1168. We believe, however, that Merriweather does not take into consideration that Congress has based Title VII back pay awards upon NLRA back pay awards.

Because Merriweather holds that the decision to deduct unemployment compensation from Title VII back pay awards is within the discretion of the trial court, this panel may not hold otherwise. We may only reverse the trial court for an abuse of that discretion. Accordingly, we affirm the decision of the district court.

We note, however, that we believe Merriweather, by which we are bound, to be incorrectly decided. The Fourth Circuit has a more enlightened view, but we are not at liberty to adopt it. This is a matter for the en banc court, and we cannot usurp its authority.

AFFIRMED.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE,

---

**3.** Although the Second Circuit allows the deduction of collateral benefits from a back pay award, it still notes that "the weight of common law authority is that collateral sources are not deductible from a tort damage award," and that "[w]here payment has been received from a fund obtained only in part from contributions made by the defendant, the majority rule is that no offset is allowed." Enterprise Association Steamfitters, 542 F.2d at 591. The Second Circuit also says that as funds for public assistance are collected only in part from the parties to this action, "the weight of common law authority would support denial of the offset." Enterprise Association Steamfitters, 542 F.2d 591–92.

KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

BY THE COURT:

A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Court en banc *without* oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of en banc briefs.