W. B. COKE, Jr., Plaintiff-Appellant,

v.

GENERAL ADJUSTMENT BUREAU,
INC., Defendant-Appellee.

No. 77–2874.

United States Court of Appeals,
Fifth Circuit.

May 7, 1980.

Edward B. Cloutman, III, Dallas, Tex.,
for plaintiff-appellant.

Kalvin M. Grove, Burton L. Reiter, Lawrence M. Cohen, Chicago, Ill., for defendant-appellee.

Before GOLDBERG, FAY and ANDERSON, Circuit Judges.

GOLDBERG, Circuit Judge:

Under the Age Discrimination in Employment Act of 1967 [ADEA], 29 U.S.C.A. §§ 621–34 (West 1975) (amended 1978), an aggrieved employee may commence suit against his employer for age discrimination only upon filing a notice of intent to sue with the Secretary of Labor within 180 days after the occurrence of the alleged unlawful act.[1] This appeal presents two questions about the meaning and nature of this notice requirement. We are asked to determine on what date the alleged unlawful act triggering the running of the notice requirement occurs when an employer, following an alleged discriminatory demotion, makes representations that the employee will be reinstated. We are also asked to decide whether the notice requirement is an absolute jurisdictional prerequisite to suit so that it cannot be equitably tolled when an employee's delay in filing notice is due to reliance on his employer's misrepresentations that he will be reinstated.

## I.

On or about May 1, 1976, W. B. Coke, Jr., was informed by his employer, General Adjustment Bureau, Inc. (GAB), that he was demoted from the position of general manager of the company's Dallas casualty office to the position of adjuster. Coke immediately assumed the new position and began receiving reduced compensation. Coke was 55 years old at the time and was replaced by an employee under 40 years of age.

Shortly after the demotion, Coke notified an official of a major client of GAB that he had been demoted and asked the official to seek his reinstatement. The official complied with Coke's request, and in May, 1976, and on several other occasions through August, 1976, GAB represented to the official that it would take corrective action to restore Coke to his former position. After each occasion, the official informed Coke of GAB's representations.

Allegedly relying on his employer's statements of intent to reinstate him, Coke delayed filing notice of intent to sue under the ADEA. In August, 1976, however, after several months of inaction on the part of the company, Coke concluded that GAB had misrepresented its intent to reinstate him. He filed notice of intent to sue with the Department of Labor on or about December 29, 1976, more than 240 days after the alleged demotion occurred but within 180 days of the time Coke claims he first learned of GAB's alleged misrepresentations.

Coke then commenced this action against his employer. He appeals from the district court's summary judgment which held that his suit was barred by 29 U.S.C. § 626(d)(1) because his notice to the Secretary of Labor of his intent to sue was given more than

---

1. The applicable provision states in pertinent part:

 No civil action may be commenced by an individual under this section until the individual has given the Secretary [of Labor] not less than sixty days' notice of an intent to file such action. Such notice shall be filed—
 (1) [W]ithin one hundred and eighty days after the alleged unlawful practice occurred . . . ..

29 U.S.C.A. § 626(d)(1) (West 1975) (amended 1978).

 In 1978, Congress amended this section of the ADEA, but the amendment is applicable only to suits filed after its effective date. Age Discrimination in Employment Act Amendments of 1978, § 4(b), Pub.L.No. 95–256, 92 Stat. 189. Since this suit was filed prior to April 6, 1978, the effective date of the amendment, the original provision of the ADEA applies. As amended, § 626(d)(1) now provides:

 No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—
 (1) [W]ithin 180 days after the alleged unlawful practice occurred . . . ..

29 U.S.C.A. § 626(d)(1) (West Supp. 1979).

180 days after the alleged violation occurred.

## II.

Appellant claims that the district court erred in granting summary judgment on the ground that his suit was time-barred by § 626(d)(1). Appellant argues that his notice was timely because the 180-day period did not begin to run until August, 1976, when he first reasonably concluded that his employer had unequivocally and finally demoted him. Alternatively, appellant contends that if the 180-day period did begin to run from May 1, 1976, the day he received formal notice of the demotion, the 180-day notice requirement should be equitably tolled or modified because his delay in filing was caused by his employer's misrepresentations.

## A. DATE OF OCCURRENCE OF ALLEGED UNLAWFUL PRACTICE

We cannot accept appellant's contention that the 180-day time period for notifying the Secretary of Labor of his intent to sue did not begin to run until August, 1976, the time appellant claims he first reasonably concluded that the demotion was "unequivocal and final." Appellant concedes in his complaint that he was demoted on or about May 1, 1976. At that time, not only did he receive formal notice of his demotion but he was unequivocally demoted: he immediately assumed the new position and began receiving reduced pay. We fail to see how the possibility of reinstatement can alter the date of occurrence of the alleged unlawful act, for uncertainty over whether an employer will take steps to remedy an alleged unlawful practice does not render the occurrence of the alleged unlawful practice any less certain.

Although we find no ADEA cases directly on point, the Supreme Court has addressed a related situation in the context of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e–2000e–17 (West 1974).[2] In *Electrical Workers Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), an employee and her union asserted that her complaint filed with the Equal Employment Opportunity Commission was timely because the date on which the alleged unlawful employment practice occurred was not the date of her discharge but rather the date on which grievance-arbitration procedures conducted pursuant to a collective bargaining agreement had been concluded. Petitioners asserted that the discharge was only "tentative" and "non-final" until the later date. *Id.* at 234, 97 S.Ct. at 446. The Supreme Court flatly rejected this contention because it was evident, and the parties had understood, that the employee had been fired as of the earlier date: "She stopped work and ceased receiving pay and benefits as of that date." *Id.* Similarly even though Coke may have anticipated reinstatement, it is obvious, and indeed appellant concedes, that he was demoted on or about May 1, 1976: As of that date he ceased working at the higher status and higher paying position.

Because appellant has not claimed that at the time of his demotion he was unaware either of the effective date of his demotion or of the discriminatory motivations behind the demotion, his reliance on two of our previous decisions is misplaced. In *Reeb v.*

---

2. This Circuit has recognized the similarity between the ADEA and Title VII, *see, e. g., Hodgson v. First Federal Savings & Loan Association of Broward County*, Fla., 455 F.2d 818, 820 (5th Cir. 1972), and the comparability of their filing provisions has often been acknowledged in determining the timeliness of a claim brought pursuant to either Act. *See, e. g., Templeton v. Western Union Telegraph Co.*, 607 F.2d 89 (5th Cir. 1979); *Marshall v. Sun Oil Co.*, 605 F.2d 1331 (5th Cir. 1979); *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295 (5th Cir. 1979).

The notice requirement applicable to Title VII claimants is set forth in 42 U.S.C.A. § 2000e–5(e) (West 1974), which provides in pertinent part:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter . . . . ..

*Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (1976), we held that the Title VII notice requirement does not begin to run until the employee knew or should have known of the facts that would support a charge of discrimination. *Id.* at 931. Assuming *arguendo* that the same standard applies in ADEA cases, *see Charlier v. S. C. Johnson & Son, Inc.,* 556 F.2d 761 (5th Cir. 1977), we do not see its relevance, for appellant does not contend that he failed to learn until August, 1976, that age had been the reason behind his demotion. Rather, appellant simply contends that he did not know until August that his employer would not remedy the previous alleged unlawful act.

The second case on which appellant relies is *Clark v. West Chemical Products, Inc.,* 557 F.2d 1155 (5th Cir. 1977), in which we held that summary judgment had been incorrectly granted because there was a genuine factual issue as to when an alleged unlawful discharge, triggering the running of the ADEA notice period, had occurred. The date of occurrence was in dispute because the employee, after receiving oral notice of discharge, nevertheless apparently continued to work for, and receive sales commissions from, his employer until he received a written notice of termination. As we have previously stated, here there was no ambiguity as to the operative date of the demotion since on or about May 1, 1976, appellant received formal notification of the demotion, immediately began working at the lower status job and immediately began receiving a reduction in pay. Thus *Clark* is not relevant to the issue before us.

■ We therefore hold that when an employee, at the time of demotion, has knowledge both of the effective date of the demotion and the facts that would reasonably lead him to conclude that the demotion was discriminatorily based, the statutory notice period begins to run from the effective date and an employee's uncertainty over whether his employer will reinstate him does not alter the date of occurrence of the alleged unlawful act. Here, the statutory notice period began to run on or about May 1, 1976, since that is the time the alleged

unlawful act of which appellant complains occurred. *Cf. Wagner v. Sperry Univac, Div. of Sperry Rand Corp.,* 458 F.Supp. 505, 512 (E.D.Penn.1978) (employee's uncertainty over possible rehiring did not prevent 180-day period from running).

### B. EQUITABLE TOLLING OF THE NOTICE REQUIREMENT

1. Because appellant filed his notice of intent to sue with the Secretary of Labor more than 180 days after the date of the alleged unlawful act, his suit is time-barred unless the notice requirement is subject to equitable modification. This Circuit has never decided whether the 180-day filing period can be equitably modified. We have repeatedly pretermitted the issue or held the equities not strong enough to warrant modification even assuming it could be done. *See Templeton v. Western Union Telegraph Co.,* 607 F.2d 89 (5th Cir. 1979) (facts did not justify tolling even if available); *Quina v. Owens-Corning Fiberglas Corp.,* 575 F.2d 1115 (5th Cir. 1978) (ignorance of ADEA rights insufficient to justify tolling even if available); *Thomas v. E. I. DuPont de Nemours & Co.,* 574 F.2d 1324 (5th Cir. 1978) (trial court instructed to decide issue on remand only if necessary); *Adams v. Federal Signal Corp.,* 559 F.2d 433 (5th Cir. 1977) (facts did not justify tolling even if available); *Charlier v. S. C. Johnson & Son, Inc.,* 556 F.2d 761 (5th Cir. 1977) (trial court instructed to decide issue on remand only if necessary); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.,* 515 F.2d 1195 (5th Cir. 1975) (tolling issue expressly pretermitted); *Powell v. Southwestern Bell Telephone Co.,* 494 F.2d 485 (5th Cir. 1974) (equities insufficient to justify tolling even if available). Because we conclude that the equities here may be strong enough to require tolling of the notice period, see p. 789, *infra,* we address the question of whether equitable tolling of the notice requirement is possible.

■ We begin by noting that our frequent characterization of the requirement as "jurisdictional" does not foreclose our inquiry. We have often stated that the

notice requirement is a jurisdictional prerequisite to suit, and yet in the next breath intimated that we may have the power to toll or modify the requirement. *See, e. g., Quina, supra,* 575 F.2d at 1118; *Clark, supra,* 556 F.2d at 765; *Edwards, supra,* 515 F.2d at 1199, 1200; *Powell, supra,* 494 F.2d at 489–90. Obviously, by leaving a crack in the door for possible equitable modification of the notice requirement, we have not been using "jurisdiction" in the strictest sense of the term, for equitable doctrines cannot be utilized to confer jurisdiction upon a federal court. *See, e. g., American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); *City of Stuart v. Green,* 91 F.2d 603 (5th Cir.), *cert. denied,* 302 U.S. 744, 58 S.Ct. 146, 82 L.Ed. 575 (1937). Rather, the notice requirement can be said to be "jurisdictional" only in the broad sense that compliance with the requirement is a precondition to suit.

We have faced a similar problem in the context of Title VII's time limitations. In *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), Judge Wisdom explained:

[C]onceptual confusion springs from a court's describing the ninety day requirement as "jurisdictional" but proceeding on the basis of an analogy to how statutes of limitations have been construed. Statutes of limitations, designed as they are primarily to prevent stale claims, are traditionally thought to be subject to much more flexible construction than statutes which confer subject matter jurisdiction upon courts. For example, many courts hold that a party may waive the defense of the statute of limitations, but virtually all courts insist that a lack of subject matter jurisdiction may never be waived and must be invoked by the court itself if the parties fail to raise it.

516 F.2d at 927. Judge Clark also recently lamented, "[i]t is illogical to designate a particular fact as necessary to the court's jurisdiction, yet, in its absence, allow the court to adjudicate whether equities indicate that the jurisdictional defect should be ignored." *Chappell v. Emco Works Co.,* 601 F.2d 1295, 1298 (5th Cir. 1979). In both *Reeb* and *Chappell,* we concluded that the confusing characterization of Title VII's notice requirements as "jurisdictional" did not foreclose inquiry into whether the requirements were subject to equitable modification.

▮ We reach the same conclusion here in the context of the ADEA notice requirement. Although a rose by any other name may smell as sweet, a prerequisite to suit by any jurisdictional name leads only to confusion when the consequences of that nomen are not explained. We therefore turn to the question of whether the notice requirement of the ADEA, even though labelled "jurisdictional," is subject to equitable modification.

We need not look far for our answer. Since the ADEA and Title VII share the common purpose of elimination of employment discrimination and their notice provisions are virtually identical, our constructions of Title VII's provisions are particularly germane to interpreting their ADEA counterparts. *See* n. 2, *supra; see also Oscar Mayer & Co. v. Evans,* 441 U.S. 2066, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). We recently held that the notice requirement of Title VII, 42 U.S.C.A. § 2000e–5(e), which is almost identical to the 180-day notice requirement of the ADEA, is subject to equitable tolling. *See Chappell v. Emco Machine Works Co.,* 601 F.2d 1295 (5th Cir. 1979). Following a thorough analysis of Supreme Court and Fifth Circuit precedent, we concluded that equitable considerations can, in some circumstances, toll the time period of § 2000e–5(e). *Id.* at 1301–2.

▮ Because we perceive no reason to treat the 180-day notice provision of the ADEA differently than the practically identical provision in Title VII, we conclude that the notice period of the ADEA is subject to equitable tolling.[3] *Accord, Nielson*

---

**3.** For suits brought after the effective date of the 1978 amendments to the ADEA, statements of Congressional intent should be highly relevant in interpreting § 626(d)(1). As previously

v. *Western Electric*, 603 F.2d 741 (8th Cir. 1979); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir. 1978); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3rd Cir.), *cert. denied*, 431 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976), *aff'd by an equally divided court*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977); *Abbott v. Moore Business Forms, Inc.*, 439 F.Supp. 643 (D.N.H.1977). Indeed, though our concept of jurisdiction is of ancient vintage, and in its finest variety attains a cold and sparkling purity, we find that the vintners of this varietal have sought a lighter bouquet. In order to treat this Act's notice provision as purely jurisdictional, we would have to assume that our vintners desired grapes of wrath for the aging process. We cannot make this assumption. We believe, rather, that they intended compassion and realism to be essential ingredients. A total abjuration of equitable tolling would too often make this fine wine go bad.

2. Having determined that the notice requirement of the ADEA is subject to equitable tolling, we now address appellant's contention that the district court erred in granting summary judgment because the facts here warrant tolling of the 180-day period until August, 1976. We conclude that there are at least material facts in dispute which, if established, would be sufficient to require tolling, and, accordingly, conclude that the district court erred in granting summary judgment.

 Perhaps in no circumstance is equitable tolling of a time limitation more justified than where a defendant, through misleading conduct, has induced a plaintiff to delay filing suit until the limitations period has run.[4] *See, e. g., Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232, 79 S.Ct. 760, 761, 3 L.Ed.2d 770 (1959). Although one of the objectives of the 180-day notice requirement of the ADEA is to give the employer early notice of possible litigation, *see Powell, supra*, 494 F.2d at 488, promoting fairness to defendants is hardly a justification for barring an employee's suit when the failure to file timely notice is due to the employer's deception. An employer who misrepresents its intent to remedy an alleged unlawful practice should expect that the aggrieved employee will delay filing suit in reliance on the employer's promise that the practice will be corrected.[5] In such circumstances, the maxim that "no man may take advantage of his own wrong," *Glus, supra*, 359 U.S. at 232, 79 S.Ct. at 762, requires that the 180-day notice period be tolled until the time the employee discovered or should have discovered the misrepresentations of the employer that induced him to delay filing suit.[6] *Cf. Ott v.*

---

stated, Congress amended § 626(d)(1) by requiring that a "charge" rather than a "notice of intent to sue" be filed with the Secretary of Labor. *See* n. 1, *supra*. The conference committee report accompanying the amendment explains that the "charge" requirement "is not a jurisdictional prerequisite to maintaining an action under the ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs . . ." H.R.Rep. No. 95-950, 95th Cong., 2d Sess. 7, 12, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 504, 528, 534.

4. Because appellant has alleged that GAB actually misrepresented its intent to rehire him, we do not address the question of whether tolling may be appropriate when the employer has made, not misrepresentations as to the likelihood of future reinstatement, but rather bona fide representations as to such likelihood, which, for some reason, were not fulfilled. *Compare Bonham v. Dresser Industries, supra*,

with *Wagner v. Sperry Univac Division of Sperry Rand Corp.*, 458 F.Supp. 505 (E.D.Penn. 1978).

5. The fact that GAB actually made the alleged misrepresentations to a third party rather than directly to Coke is immaterial provided GAB could have foreseen that the third party would convey the statements to Coke.

6. In *Chappell*, we recognized that equitable tolling is available to suspend the running of Title VII's notice period in at least three situations. *See Chappell, supra*, 601 F.2d at 1302-3. Although the instant facts do not comport fully with any one of these three situations, the principle underlying our holding here is similar to that justifying tolling in one of the situations. We have allowed delay in the commencement of the 180-day period until the claimant knew or should have known the facts that would give rise to his Title VII claim because "it [would be] unfair to allow a defendant to conceal facts

*Midland Ross Corp.*, 523 F.2d 1367, 1370 (6th Cir. 1975) (applying a similar rule to the ADEA's three-year statute of limitations for willful violations).

 Summary judgment should not be granted if there is a genuine issue as to any material fact. *See, e. g., Irwin v. United States*, 558 F.2d 249, 251 (5th Cir. 1977). The burden is on the moving party to establish that "there is 'not the slightest doubt as to the facts and that only the legal conclusion remains . . . .'" *Clark v. West Chemical Products, Inc.*, 557 F.2d 1155, 1157 (5th Cir. 1977). Appellant presented affidavits to the district court in support of his claim that GAB misrepresented its intent to reinstate him, that he reasonably relied thereon, and that he first reasonably discovered that GAB had misrepresented its intent in August, 1976. Since GAB, the moving party, countered only by way of a general denial, GAB did not shoulder its burden of showing that there were no genuine issues of fact which, if resolved in favor of appellant, would require tolling of the 180-day notice requirement until August, 1976.

Accordingly, we reverse the summary judgment of the district court and remand for further proceedings consistent with our opinion.

REVERSED AND REMANDED.

FAY, Circuit Judge, concurring in part and dissenting in part:

Most respectfully, while concurring in parts I and II A of the majority opinion, I dissent from part II B and the reversal of the summary judgment entered by the district court.

I agree with Judge Goldberg that there is "no reason to treat the 180-day notice provision of the ADEA differently than the practically identical provision in Title VII" and consequently this case is controlled by our *en banc* opinion in *McArthur v. Southern*

*Airways, Inc.*, 569 F.2d 276 (5th Cir. 1978). As I stated in *Chappell*, 601 F.2d at 1304, timely notice is a jurisdictional prerequisite and equitable considerations are irrelevant.

Judge Rubin's dissent in *McArthur*, 569 F.2d at 278, is particularly helpful in understanding precisely what the majority held. I continue to be perplexed by panels of our court ignoring this controlling precedent.

Without discussing the "equities" of attempting to rely upon what an employer is alleged to have told a client after having been demoted and reduced in salary, I would affirm the summary judgment based upon lack of jurisdiction for failure to file a timely notice under 29 U.S.C. § 626(d)(1).

that support the plaintiff's cause of action and then to rely on the statute of limitations to bar the suit when a duly diligent plaintiff was unable to discover those facts." *Id.* at 1303; *see Reeb, supra* at 930. Similarly, here it would be unfair to allow a defendant to induce a plaintiff to delay filing suit by falsely representing that it would correct the alleged unlawful act and then to rely on the time period to bar suit when a conscientious plaintiff was unable to discover that the representations were false.