Paul NATON, Plaintiff-Appellee,

v.

The BANK OF CALIFORNIA,
Defendant-Appellant.

Paul NATON, Carl Gent, Lydia Kravich,
Thomas Marlin, Orville Vaughn,
Plaintiffs-Appellants,

v.

The BANK OF CALIFORNIA,
Defendant-Appellee.

Nos. 78–1059, 78–1562.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1980.

Decided May 4, 1981.

Andrew C. Peterson, Los Angeles, Cal., argued for Bank of California; Dennis H. Vaughan, Paul, Hastings, Jonofsky & Walker, Los Angeles, Cal., on brief.

Mark I. Schickman, San Francisco, Cal., argued for Naton; Michael Gilfix, Gilfix & Morse, Palo Alto, Cal., Arthur Leinwohl, Los Altos, Cal., Ralph Lee, Palo Alto, Cal., on brief.

Before TRASK and HUG, Circuit Judges, and WYATT *, Senior District Judge.

HUG, Circuit Judge:

This action arises under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–34 (amended 1978). Plaintiff Paul Naton brought this suit against defendant Bank of California, N.A. (the "Bank") alleging that the Bank terminated his employment in 1975 because of his age.[1] The jury returned a special verdict for Naton. The Bank appeals from the judgment for Naton and from the district court's denial of the Bank's motions for dismissal of Naton's claim, for judgment n. o. v., and for a new trial. Naton appeals

rulings of the district court regarding damages. In addition, four individuals who joined with Naton in the action appeal the dismissal of their claims. We remand for further proceedings.

## I

### Facts

Paul Naton was hired by the Bank in 1965 at age 51 as a trust business development officer. In January of 1975 the Bank instituted a reduction in force which affected 148 employees. On January 17, 1975, the Bank advised Naton that he was terminated pursuant to a bank-wide reduction in force. Naton performed no services at the behest of the Bank after January 17, 1975. In the Bank's separation report, a copy of which was given to Naton, the exit interviewer made the following notation:

Terminated due to staff reduction.

Employee will receive 3½ months separation pay from January 20, 1975 through May 2, 1975. Last day worked, January 17, 1975.

EFFECTIVE TERMINATION DATE: May 2, 1975.

Placed on leave of absence without pay May 5th to January 2, 1976.

Naton notified the Secretary of the Department of Labor of his intent to sue on November 24, 1975, 311 days after the Bank notified Naton that his employment was terminated.

On May 20, 1976, Naton filed this age discrimination suit as a class action pursuant to Federal Rule of Civil Procedure 23. The district court ruled that Rule 23 was not available in a class suit brought under the ADEA, but the court allowed those individuals whom Naton claimed to represent a thirty-day period within which to "opt-in" to the action, pursuant to 29 U.S.C. §§ 626(b), 216(b). Carl Gent, Lydia Kravich, Thomas Martin and Orville Vaughn ("opt-ins") filed consents to be represented.

---

* Honorable Inzer B. Wyatt, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. 29 U.S.C. § 623(a)(1) provides:

(a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]

On the Bank's motion for summary judgment, the district court ruled that the complaints of the "opt-ins" should be dismissed because they failed to file individual notices of intent to sue with the Secretary of Labor and to commence proceedings with the California Fair Employment Practices Commission (FEPC). The district court also struck Naton's prayer for compensatory damages for pain and suffering, ruling that such damages were not recoverable in ADEA actions. The district court rejected the Bank's argument that Naton's action should be dismissed for failure to timely file notice of intent to sue.

Naton's claim was tried before a jury, which returned a special verdict in his favor on the issue of liability. After conducting further proceedings concerning damages, the district court entered judgment in favor of Naton on September 9, 1977. The district court awarded Naton back pay for the period of January 17, 1975 through September 9, 1977, and "front pay" for the period of September 10, 1977 through June 30, 1979, the date of his normal retirement. From the back pay award, the district court deducted $5,040 in unemployment compensation benefits received by Naton, and $11,300.04 in sick leave and vacation pay, which the Bank had previously paid to Naton. The district court denied the Bank's motion for a judgment notwithstanding the verdict and, in the alternative, for a new trial.

## II

### Timely Notice of Intent to Sue

Naton was required to file his notice of intent to sue with the Secretary of Labor within 300 days after "the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(2).[2] The Bank contends that the limitations period began to run when Naton was informed of his discharge on January 17, 1975. Under that theory, Naton's notice of intent to sue, filed on November 24, 1975, was filed 11 days beyond the statutory period. On the other hand, Naton contends that his cause of action did not accrue until May 2, 1975, which was the "effective termination date" entered on the Bank's separation report and the date that Naton ceased drawing separation pay. Under Naton's theory, his notice of intent to sue was filed within 206 days of the unlawful practice, well within the 300-day period. Alternatively, Naton argues that the Bank is equitably estopped from asserting that the limitations period began to run on any date prior to May 2, 1975.

The district court ruled that the alleged unlawful practice occurred on May 2, 1975. Accordingly, it held that Naton's notice of intent to sue was timely filed, and it did not address the issue of equitable estoppel.

### A. Date of the Alleged Unlawful Practice

In selecting the "effective termination date" as the date of the alleged unlawful practice, the district court relied heavily on the analysis in *Moses v. Falstaff Brewing Co.*, 525 F.2d 92 (8th Cir. 1975). In *Moses*, the plaintiff in an age discrimination suit was notified of her discharge on November 12, and she ceased working for her employer on November 16. However, the plaintiff was officially terminated for administrative

---

2. At the time this action was brought, 29 U.S.C. § 626(d) provided in part:

(d) No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—
(1) within one hundred and eighty days after the alleged unlawful practice occurred, or
(2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Section 626(d) has been amended, but the amendment applies only to actions brought after its effective date, April 6, 1978. *See Hageman v. Philips Roxane Laboratories, Inc.*, 623 F.2d 1381, 1382 n.2 (9th Cir. 1980). This action was brought before the effective date of the amendment; therefore, the original provisions of § 626(d) apply. Because this action arose in California, a deferral state within the meaning of § 633(b), we look to the limitations period set forth in § 626(d)(2). *See Bean v. Crocker National Bank*, 600 F.2d 754 (9th Cir. 1979). The parties agree that the 300-day limitations period applies.

purposes on November 30, and she continued to draw vacation pay until that date. The *Moses* court ruled that the statutory notice period began to run on November 30, because the discharge was "not fully implemented" until the official termination date.

Although the district court's reliance on *Moses* was reasonable in light of the authority available to it at the time it rendered its decision, other courts since have disapproved of *Moses*. In *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), the court held that an alleged unlawful practice occurs on the date that notice of termination and the last day of work coincide. Rejecting *Moses*, the court disapproved of a rule focusing on an employer's official termination date; employers might adopt different dates for different administrative purposes, and it would be inappropriate to determine the timeliness of an employee's suit on the basis of records within the exclusive control of the employer. In addition, a rule focusing on the date of termination of economic benefits might dissuade an employer from extending benefits to a discharged employee after the employee had ceased working. *Id.* at 191–92. Other circuits have adopted the *Bonham* test or a similar rule. *See Wilkerson v. Siegfried Insurance Agency, Inc.*, 621

F.2d 1042 (10th Cir. 1980); *Krzyzewski v. Metropolitan Government*, 584 F.2d 802 (6th Cir. 1978) (Title VII); *Payne v. Crane Co.*, 560 F.2d 198 (5th Cir. 1977); *cf. Delaware State College v. Ricks*, —— U.S. ——, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (in Title VII action, alleged unlawful practice occurred when college reached a final decision to deny tenure to plaintiff and plaintiff was notified).[3]

For the reasons expressed in *Bonham*, we hold that when unequivocal notice of termination and the last day of work coincide, the alleged unlawful practice occurs on that date. In this case, there is no dispute that those events coincided on January 17, 1975.[4] We hold as a matter of law that the alleged unlawful practice occurred on that date, more than 300 days before Naton filed his notice of intent to sue. Because we find that Naton's notice was not timely filed, we consider his argument relating to equitable modification of the limitations period.

### B. Equitable Estoppel

In *Hageman v. Philips Roxane Laboratories*, 623 F.2d 1381, 1385–86 (9th Cir. 1980), this court reserved the question whether the limitations periods in section 626(d) are subject to equitable modification. Deci-

---

**3.** We have noted that the procedural requirements of Title VII and the ADEA are not identical. *See Bean*, 600 F.2d at 758–59. Each statute, however, sets forth a limitations period that begins running upon the occurrence of an "alleged unlawful practice," 29 U.S.C. § 626, or an "alleged unlawful employment practice," 42 U.S.C. § 2000e–5(e). Therefore, the Supreme Court's interpretation of the relevant term in Title VII provides highly persuasive authority for our interpretation of the counterpart in the ADEA. *See generally Coke v. General Adjustment Bureau, Inc.*, 616 F.2d 785, 789 (5th Cir. 1980). It is doubtful that the full rationale of the Third Circuit's decision in *Bonham* is consistent with the Court's decision in *Ricks*. In *Ricks* the Court apparently rejected the suggestion in *Bonham* that the limitations period will not begin to run until the last day of work if unequivocal notice of discharge is given earlier. *Compare Ricks*, —— U.S. at —— ——, 101 S.Ct. at 503–506 *with Bonham*, 569 F.2d at 192 *and Marshall v. Kimberly-Clark Corp.*, 625 F.2d 1300 (5th Cir. 1980). However, we need not resolve that matter in this case, because Na-

ton's last day of regular work and the notice of his termination occurred on the same day.

**4.** It appears from the record that, upon Naton's request, the Bank allowed Naton to return to his office for a few days after January 17 to effect an orderly transfer of his duties. However, January 17 was Naton's last day of regular work for purposes of determining the date of commencement of the limitations period. *See Wilkerson*, 621 F.2d at 1044–45. Even if the extra days in the office could be considered, the limitations period still would have expired before the date that the notice of intent to sue was filed. In addition, although an employer's misleading representations concerning reinstatement might justify equitable modification of the limitations period, the commencement of the running of the limitations period is *not* delayed by the possibility of reinstatement. *See Coke*, 616 F.2d at 787, 790. *See also Ricks*, —— U.S. at ——, 101 S.Ct. at 506.

sions of other circuits strongly support the argument that the limitations periods in section 626(d)(1) & (2) are not jurisdictional requirements, but are of the nature of statutes of limitations, subject to equitable modification. *See Wright v. Tennessee*, 628 F.2d 949, 952–53 (6th Cir. 1980) (en banc) (citing to decisions of several other circuits).

We agree that the limitations period set forth in section 626(d)(2) may be equitably modified. The supporting policy reasons are expressed in *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976), *aff'd by equally divided court*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977):

> The ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment. Additionally, strict compliance with section 626(d)(1)'s time limitation should not be required of laymen attempting to enforce their statutory rights.

*Id.* at 1260 (citations omitted). Our decision on equitable modification is compatible with our adoption of the *Bonham* test for determination of the commencement of the limitations period. The limitations period begins to run upon the occurrence of an alleged unlawful practice, even though the selection of a later date may seem fairer in particular cases; harsh results may be avoided through equitable modification of the limitations period.

Two kinds of equitable modification have been recognized: (1) equitable tolling, which often focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant, *e. g.*, *Abbott v. Moore Business Forms, Inc.*, 439 F.Supp. 643, 646–49 (D.N.H.1977), *cited with approval* in *Wright*, 628 F.2d at 953; and (2) equitable estoppel, which usually focuses on the actions of the defendant, *e. g.*, *Bonham*, 569 F.2d at 193 & n.6. Naton's sole argument for equitable relief is that the Bank is estopped from asserting that

the limitations period commenced prior to May 2, 1975, because the Bank designated that date as the "effective termination date" in its separation report.

Equitable modification of the limitations period may be appropriate when misleading conduct of the defendant has induced the plaintiff to delay filing notice of intent to sue. *See, e. g., Wilkerson*, 621 F.2d at 1045; *Coke v. General Adjustment Bureau, Inc.*, 616 F.2d 785, 790–91 (5th Cir. 1980). More specifically, in appropriate circumstances the defendant's records and correspondence may form the basis of equitable estoppel. *Bonham*, 569 F.2d at 193 n.6.

A finding of estoppel must rest on consideration of several factors. Of critical importance is a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations. *See Cooper v. Bell*, 628 F.2d 1208, 1214 (9th Cir. 1980). Also important is evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct. *See Coke; Cooper v. Bell*. And, with respect to a claim for either tolling or estoppel, the trier should consider the extent to which the purposes of the limitations period have been satisfied, notwithstanding the delay in filing. *See Dartt v. Shell Oil Co.*, 539 F.2d at 1261.[5]

We decline to evaluate these factors for the first time on appeal. Whether to grant equitable relief from the statutory provisions is a matter that should be determined "on a case-by-case basis, depending on the equities in each case." *Hageman*, 623 F.2d at 1385–86. That task should be performed in the first instance in the district court. *See generally Wright*, 628 F.2d at 953; *Wilkerson*, 621 F.2d at 1045.

## III

### Dismissal of the Claims of the Opt-ins

The class of "opt-ins" who joined in Naton's action contend that their claims are

---

**5.** Our discussion of the factors to be considered in determining whether grounds for estoppel exist is not intended to be exhaustive. Whether other considerations are relevant to a claim of equitable relief should be determined on the basis of the facts of each case.

not barred by their failure to file individual notices of intent to sue with the appropriate state and federal agencies. We affirm the dismissal of their claims.

A special type of "opt-in" class action may be brought pursuant to 29 U.S.C. § 216(b), which is incorporated by reference in the ADEA, 29 U.S.C. § 626(b). *See Bean v. Crocker National Bank*, 600 F.2d 754, 759 & n.12 (9th Cir. 1979). Section 216(b) provides that an employee may bring an action on behalf of himself and other employees who are "similarly situated" and who file written consent to join in the action.

In some circumstances, members of an "opt-in" class need not file individual notices to sue. In *Bean v. Crocker National Bank*, we held that

> the ADEA authorizes grievants who have complied with section 626(d) to bring representative actions pursuant to section 216(b) on behalf of "similarly situated" employees, who may not have individually filed notice of intent to sue.

600 F.2d at 759. Our decision in *Bean* was recently followed by the Tenth Circuit in *Mistretta v. Sandia Corp.*, 639 F.2d 588, at 593–594 (10th Cir. 1980).

■ The rationale of *Bean* does not apply to the facts of this case. First, in both *Bean* and *Mistretta* at least one complainant complied with the literal requirements of the 300-day limitations period set forth in section 626(d).[6] In contrast, we have concluded that Naton did not timely file his notice of intent to sue. His action will survive only if he can establish grounds for equitable modification of the limitations period, and the basis for equitable relief for Naton would not necessarily exist with respect to the claim of each "opt-in." Second, in both *Bean* and *Mistretta* two or more complainants filed notice that they intended to bring an action on behalf of themselves and others similarly situated. *Bean*, 600 F.2d at 760; *Mistretta*, at 594. That notice helped to satisfy the purposes of section 626(d) because it put the Secretary of Labor

and the employers on notice "that the discrimination charges encompassed a pattern of unlawful conduct transcending an isolated individual claim and that they should act accordingly." *Bean*, 600 F.2d at 760. In this case, Naton's notices to both the state and federal agencies expressed no intention to sue on behalf of anyone other than himself. In these circumstances, the district court properly dismissed the claims of the "opt-ins."

## IV

### Proof of Age Discrimination

■ The Bank argues that the district court erred in denying its motion for a judgment notwithstanding the verdict. Such a motion should be granted only if "the evidence when viewed most favorably to the party against whom the motion is directed cannot support a verdict in that party's favor." *Traver v. Meshriy*, 627 F.2d 934, 939–40 (9th Cir. 1980). The precise question raised by the parties is whether the evidence supports a finding that Naton's age was a determining factor in his discharge. *See Kelly v. American Standard, Inc.*, 640 F.2d 974, 984–85 (9th Cir. 1981).

■ The following evidence was adduced at trial. Naton was terminated pursuant to a bank-wide reduction in force, which affected 148 individuals. Naton was employed in the Bank's Trust Department as a Trust Officer. The Trust Department was an autonomous unit within the Bank for purposes of selecting employees to be terminated. Seven Trust Officers in the Trust Department were terminated, including Naton, and all seven were within the protected age group. The Trust Department of the Bank was given no criteria for the selection of employees to be terminated other than cutting costs, and the Bank management had established no uniform criteria for the selection of employees to be terminated. One pretermination document listed the

---

6. In *Bean*, we decided that a complainant in a deferral state may take advantage of the 300-day limitations period set forth in § 626(d) even though the state agency had not been given timely notice of intent to sue. 600 F.2d at 757–59.

Trust Department terminees by name, age, salary and the net savings that would inure to the Bank from the employees' termination. There was no discussion or analysis in the document comparing the cost of the employee with the benefit derived from the services of the employee.

Although the Bank asserted that Naton's specific position of Trust Business Development Officer was eliminated because it was an unprofitable position, the evidence shows that the Bank continued the function that Naton performed after he was terminated.

There also was testimony concerning discriminatory comments made by Bank personnel. One of Naton's superiors, Mr. Wynne, advised Naton that the Bank had considered a wage freeze in lieu of the reduction in force, but rejected such an alternative because the Bank "would lose all [its] young people." Mr. David Jackson, Vice President of Corporate Trusts at the Bank, advised Naton that Naton had "very, very good grounds for an age discrimination suit." At an employment discrimination meeting called by Bank management for the purpose of informing supervisors about its affirmative action program, Mr. Vaughn asked the representative from the Personnel Department about the Bank's policy on age discrimination. The representative laughed and said that age discrimination was not important because "older people didn't have any organization for clout." Mrs. Hughes, Head of the Trust Personnel Office of the Trust Division, stated to Mr. Vaughn that an applicant, Mr. Healy, was "over the hill" and suggested that Mr. Vaughn "seek to hire younger people whom [he] could promote."

Based on this record, we conclude that the evidence was sufficient to support the jury's finding that Naton's age was a determining factor in his discharge. The district court did not err in denying the Bank's motion for a judgment notwithstanding the verdict.

## V

### Evidentiary Rulings

The Bank contends that the district court erred in overruling the Bank's objections on several evidentiary matters and in declining to grant a new trial on those grounds. Specifically, the Bank complains that (1) the jury verdict was contrary to the clear weight of the evidence, and (2) the district court erred in admitting into evidence allegedly prejudicial testimony and statistical evidence.

 The district court did not abuse its discretion in admitting into evidence the questioned testimony and statistical evidence. *See United States v. Mouton*, 617 F.2d 1379, 1384 (9th Cir. 1980); *Wright v. Hartford Accident and Indemnity Co.*, 580 F.2d 809 (5th Cir. 1978). We have determined that the evidence supports the jury's verdict (*see* section IV, *supra*). Therefore, the district court did not abuse its discretion in denying the motion for a new trial. *See Simpson v. Union Oil Co. of California*, 411 F.2d 897, 907 (9th Cir.), *rev'd on other grounds*, 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed.2d 13 (1969).

## VI

### Denial of Compensatory Damages for Pain and Suffering

 Naton appeals from the district court's order striking his prayer for compensatory damages for pain and suffering. We agree with the district court that damages for pain and suffering may not be awarded under the ADEA.

The ADEA provides:

Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided*, That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or

promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section . . . .

29 U.S.C. § 626(b). This language is ambiguous. The statute does not specifically mention damages for pain and suffering or other general compensatory damages, and such damages are conspicuously omitted from the definition of "amounts owing." However, the final clause quoted above suggests that the remedial powers of the district court are quite broad.

All circuit courts that have addressed this question have concluded that the ADEA does not authorize an award of damages for pain and suffering. *See Slatin v. Stanford Research Institute*, 590 F.2d 1292 (4th Cir. 1979); *Vasquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir. 1978); *Dean v. American Security Insurance Co.*, 559 F.2d 1036 (5th Cir. 1977) *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir. 1977), *cert. denied* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Several district courts have reached the opposite conclusion. *See, e. g., Wise v. Olan Mills, Inc.*, 485 F.Supp. 542 (D.Colo.1980). *See also Kelly v. American Standard, Inc.*, 640 F.2d 974, 983 n.14 (9th Cir. 1981).

After a thorough review of the authorities supporting the opposing views, we find ourselves in agreement with the other Courts of Appeals. The availability of damages for pain and suffering could hamper the conciliation process, and it would be inappropriate to find congressional authorization for such damages by implication. *See Rogers*, 550 F.2d at 840–41; *Dean*, 559 F.2d at 1039. Other remedies expressly authorized by section 626(b) are sufficient to fulfill the purposes of the ADEA. *See id.* at 1038; *Vasquez*, 579 F.2d at 112.

## VII

### Set-offs Against the Back Pay Award

A. *Unemployment Compensation Benefits*

The district court deducted from Naton's back pay award an amount equal to the unemployment compensation benefits that Naton received from a state fund to which both Naton and the Bank had contributed. Naton argues that the deduction was improper because the unemployment compensation constitutes benefits received from a collateral source.

Under the collateral source rule, benefits received by an injured party from a source wholly independent of the wrongdoer should not be deducted from the damages that the wrongdoer otherwise is compelled to pay the injured party. *See Franklin Supply Co. v. Tolman*, 454 F.2d 1059, 1073–74 (9th Cir. 1972); *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 533–35 (9th Cir. 1962). Several district courts have declined to treat unemployment compensation as a collateral benefit and have deducted the compensation from back pay awards in ADEA actions. *See Bishop v. Jelleff Associates*, 398 F.Supp. 579, 597 (D.D.C. 1974); *Schulz v. Hickok Manufacturing Co., Inc.*, 358 F.Supp. 1208, 1217 (N.D.Ga.1973); *EEOC v. Sandia Corp.*, 639 F.2d 600, at 626 n.9 (10th Cir. Aug. 13, 1980) (citing to several district court decisions). Some Courts of Appeals apparently have left this matter to the discretion of the district court. *See Id.* at 624–628; *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 736 (5th Cir. 1977) (affirming refusal to deduct unemployment compensation from ADEA award); *EEOC v. Enterprise Association Steamfitters Local 638*, 542 F.2d 579, 592 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977) (affirming deduction of unemployment benefits from Title VII award); *Merriweather v. Hercules, Inc.*, 631 F.2d 1161, 1168 (5th Cir. 1980) (affirming deduction in Title VII suit).

In this case, the source of the unemployment benefits may not be "wholly independent" of the Bank, because the Bank contributed to the unemployment compensation fund. There is some doubt in this circuit about the applicability of the collateral source rule in these circumstances. *See Gypsum Carrier*, 307 F.2d at 534 & n.31; *cf. Olivas v. United States*, 506 F.2d 1158, 1162–63 (9th Cir. 1974) (proceeds from in-

surance policy were not collateral benefit because defendant was responsible for payment of all the premiums); *Steamfitters Local 638*, 542 F.2d at 591 ("majority rule" treats proceeds as collateral benefit if only partially funded by defendant). In *Gypsum Carrier*, we stated that the "result will depend upon the purpose and nature of the fund and of the payments." 307 F.2d at 534 n.31 (dicta).

■ We need not decide whether the collateral source rule applies in this case, because we hold that even if the district court was authorized to treat the unemployment compensation as a collateral benefit, it retained the discretion under the ADEA to deduct the compensation from the back pay award. The ADEA authorizes the district court to exercise its discretion to "grant such legal or equitable relief as may be appropriate to effectuate the purposes" of the Act. 29 U.S.C. § 626(b); *see Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d at 736. In most cases, application of the collateral source rule is not necessary to assure a full recovery for the injured party; rather, it allows a "windfall" to be enjoyed by the injured party rather than by the wrongdoer. *See Gypsum Carrier*, 307 F.2d at 534. The relief granted by the district court fulfilled the purposes of the Act. The district court did not abuse its discretion in declining to award what amounts to double recovery for lost employment. *See Merriweather*, 631 F.2d at 1168; *Steamfitters Local 638*, 542 F.2d at 592.

### B. *Vacation and Sick Pay*

After Naton's discharge, the Bank paid Naton $11,300.04 for accumulated sick leave and vacation pay benefits. The district court deducted that sum from its award. Naton contends that the district court erred in deducting those benefits and in failing to award Naton additional damages for vacation benefits that Naton would have accrued from the date of his discharge to the date of his normal retirement.

---

**7.** We reject Naton's contention that this policy itself is discriminatory.

The collateral source rule is inapplicable to these benefits, because the Bank is the exclusive source of the benefits. *See e. g., Sandia Corp.*, at 626–628; *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir. 1975). The question before us is whether Naton would have been entitled to receive compensation for those accrued benefits in addition to his regular pay had he terminated his employment through normal retirement rather than discharge. If so, the benefits constituted part of his compensation, and the district court erred in deducting the benefits paid and in failing additionally to credit Naton's award in the amount of expected benefits not yet paid. On the other hand, if Naton would not have received the cash benefits but for his termination, the Bank's payment of the benefits reduced its liability to Naton, and deduction from the award was proper. *See id.*

■ The evidence supports the Bank's assertion that its policy did not permit sick leave or vacation benefits to be "cashed out," but that a retiring employee was required to use the accrued benefits by ceasing to work prior to the retirement date.[7] In these circumstances, the district court properly deducted the benefits. Had Naton continued to work until normal retirement, he could have used the benefits for actual illness or vacation, or to cease working prior to retirement. However, the benefits could not have resulted in any additional monetary compensation at the time of retirement; the back pay and "front pay" awarded by the district court fully compensated Naton for his monetary losses. We think that was sufficient to remedy Naton's losses in a manner consistent with the purposes of the ADEA.

### VIII

#### Conclusion

We affirm the dismissal of the claims of the "opt-ins." The action is remanded for a determination by the district court whether Naton's failure to file a timely notice of intent to sue may be excused on grounds of

equitable estoppel.[8] If the district court finds for Naton on this issue, the judgment shall stand affirmed subject to appeal of the estoppel determination. If the district court finds against Naton on this issue, judgment shall be entered for the Bank, subject to appeal of the estoppel determination.

---

**8.** The judgment in this action was not based upon a general verdict. The jury verdict was limited to the determination of only two issues: whether Naton's employment was terminated because of his age and/or whether Naton was denied reemployment because of his age. The remaining issues were reserved to the court. Neither party has raised an issue on appeal concerning this procedure. Thus, in this ac-

tion, the inquiry is properly one for the court. We need not consider whether under other circumstances the estoppel question would be an issue of fact for determination by the jury. *See Ott v. Midland-Ross Corp.*, 600 F.2d 24, 30–31 (6th Cir. 1979) (tolling in ADEA suits is question of fact for jury); *United States v. James Stewart Co.*, 336 F.2d 777, 779 (9th Cir. 1964) (estoppel is question of fact).