**Frederick PFEIFFER,**
**Plaintiff-Appellant,**

v.

**ESSEX WIRE CORP.,**
**Defendant-Appellee.**

No. 81–1266.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1982.

Decided July 8, 1982.

Donald A. Carr, Carr & O'Rourke Assoc., Chicago, Ill., for plaintiff-appellant.

Peter F. Healey, Reed, Smith, Shaw & McClay, Washington, D. C., for defendant-appellee.

Before PELL, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and GORDON,* District Judge.

PELL, Circuit Judge.

This interlocutory appeal, certified under 28 U.S.C. § 1292(b), arises under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1976 & Supp. II 1978) (ADEA or Act). Following a trial below, the jury awarded the plaintiff actual and compensatory damages of $32,259.56, and punitive damages of $150,000.00. The trial court then determined that it had erred in allowing evidence and giving instructions on the damages issue, and granted the defendant's motion for a new trial. The court then certified the following questions to this court:

A. Whether compensatory damages for pain and suffering are properly recoverable under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq.

B. Whether punitive damages are properly recoverable under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq.

The plaintiff-appellant contends first that the language of the ADEA grants courts the remedial power to impose such damages; second, that the imposition of such damages is consistent with the purpose of

* Myron L. Gordon of the Eastern District of Wisconsin sitting by designation.

the Act as revealed in the legislative history; third, that the availability of liquidated damages does not prohibit recovery of such damages; and fourth, that the administrative conciliation scheme of the Act does not preclude the award of such damages.

## I.

The plaintiff, Frederick Pfeiffer, was hired by the defendant's predecessor in 1941. The defendant purchased the company in 1969, and the plaintiff remained as an hourly employee until 1973, when he became a department manager and was transferred to a salaried status. He remained in that status until 1975, when he was discharged. At that time the plaintiff was fifty-four years old. The defendant purportedly replaced the plaintiff with a forty-five year old employee.

Subsequent to his discharge, the defendant remained unemployed for five weeks. During that period he received state unemployment compensation. He then obtained new employment at greater remuneration—both in wages and pension benefits—than he would have received had he remained in the employ of the defendant. In 1977 the plaintiff initiated the instant civil action, alleging that his discharge violated the ADEA.

## II.

The plaintiff's first contention is that the express statutory language of the Act grants courts unlimited jurisdiction to award the full panoply of legal and equitable relief, including compensatory damages for pain and suffering and punitive damages. He bases this argument upon the language of the remedial portion of the Act, the text of which is set forth in the margin.[1]

We are not persuaded, however, that the quoted language unambiguously authorizes the grant of broad relief sought by the plaintiff. Initially we note that the language of the statute mentions neither damages for pain and suffering nor punitive damages, and that such damages are omitted from the statutory definition of "amounts owing." *Naton v. Bank of California*, 649 F.2d 691, 699 (9th Cir. 1981).

Furthermore, the seemingly broad language must be read in the context of the entire section. *Dean v. American Security Insurance Co.*, 559 F.2d 1036, 1038 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). There are two limitations built into section 626(b). The first is contained in the reference to sections 216 and 217 of the chapter, the Fair

---

1. "(b) The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: Provided, that liquidated damages shall be payable only in cases of willful violations of this chapter. *In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation* judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under *this section*. Before instituting any action under this section, the Secretary shall attempt to eliminate the

discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b) (1976 & Supp. II 1978) (emphasis added).

We also reject the plaintiff's contention that the language of § 626(c) is an independent source of remedies under the statute. That section provides:

(c) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: Provided, that the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter.

Its sole effect is to give individuals the ability to take advantage of the relief conferred in § 626(b), the preceding subsection. *Schlicke v. Allen-Bradley Co.*, 448 F.Supp. 252, 253 (E.D. Wis.1978).

Labor Standards Act. 29 U.S.C. §§ 201–19 (1976) (FLSA). The second is the definition of amounts owing as unpaid minimum wages or unpaid overtime compensation. We therefore reject the plaintiff's contention that the statute expressly grants the remedies he seeks to invoke, and turn to a fuller examination of the statutory context, as well as the legislative history and purpose, to determine whether the grant of such broad relief was, indeed, the intention of Congress.

### III.

We note preliminarily that five circuits have considered the issues now before us. All have rejected the plaintiff-appellant's position, and held that recovery under the ADEA is limited to unpaid wages and, in the case of willful violation, an additional equal amount as liquidated damages. *Naton v. Bank of California*, 649 F.2d 691 (9th Cir. 1981) (pain and suffering); *Slatin v. Stanford Research Institute*, 590 F.2d 1292 (4th Cir. 1979) (pain and suffering); *Walker v. Pettit Construction Co.*, 605 F.2d 128 (4th Cir. 1979) (punitive); *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir. 1978); *Dean v. American Security Insurance Co.*, 559 F.2d 1036 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978) (pain and suffering and punitive); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978) (pain and suffering).

### A.  The Statutory Context

#### 1.  The Effect of Reference to the FLSA

When the ADEA was formulated by Congress, several alternatives were considered. The version ultimately adopted, as proposed by Senator Javits, eschewed various schemes of enforcement in favor of selective adoption of the FLSA enforcement provisions. 113 Cong.Rec. 7076, 31250 (1967); *see Vazquez*, 579 F.2d at 109–10.

The FLSA created a private right of action to recover unpaid minimum wages and an equal amount as liquidated damages. 29 U.S.C. § 216(b) (1976). It also provided criminal penalties for violation. *Id.* § 216(a). No provision was made for compensatory or punitive damages, and courts have universally struck down requests for such damages. *See, e.g., Overnight Transportation Co. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) (punitive damages); *Martinez v. Behring's Service, Inc.*, 501 F.2d 104, 105 (5th Cir. 1974); *Powell v. Washington Post Co.*, 267 F.2d 651 (D.C.Cir.1959), *cert. denied*, 360 U.S. 930, 79 S.Ct. 1449, 3 L.Ed.2d 1544 (pain and suffering). Congress can be presumed to have had the knowledge of the interpretation given the FLSA when it enacted the ADEA, *Lorillard v. Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978), and therefore if it intended punitive and pain and suffering damages to be obtainable under the ADEA, that availability must be the result of the selective changes made in the remedial provisions of the FLSA to obtain the final version of the ADEA.

Three pertinent changes were made. First, the ADEA eliminated the criminal penalty of § 216(a) of the FLSA. Second, it limited the availability of liquidated damages, obtainable in any private suit under FLSA, to cases where an ADEA claimant could demonstrate that the violation was willful. These two changes suggest Congress intended to limit the scope of remedies under the ADEA. The third change, however, was the addition of the expansive language relied on by the plaintiff, which provides for "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter." We turn, therefore, to the inquiry whether the limitation to FLSA remedies will effectuate the purposes of the ADEA. *See Vazquez*, 597 F.2d at 110–11.

#### 2.  The Administrative Conciliation Scheme

Several circuits have followed the lead of the Court of Appeals for the Third Circuit in *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir. 1977), *cert. denied*, 439 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978), and determined that award of dam-

ages beyond unpaid wages and liquidated damages would hamper the administrative conciliation process envisioned by the statute. *Naton*, 649 F.2d at 699; *Slatin*, 590 F.2d at 1296; *Dean*, 559 F.2d at 1038–39. The process of ADEA enforcement requires initial recourse to conciliation by the Department of Labor, subsequent recourse to a private suit if conciliation fails, and termination of that private right if the Secretary of Labor brings suit. 29 U.S.C. §§ 626(b) and (c)(1).

The *Rogers* court noted the deleterious effect availability of damages beyond the FLSA limit would have on such administrative conciliation: that such entitlement without guidelines is a vague and amorphous concept uncommon in administrative actions; that introduction of such an element of uncertainty would impair the conciliation process; that the Act itself does provide an objective test, the amount of lost earnings; and, apparently most significantly, that the possibility of recovering a large verdict will make a claimant less than enthusiastic about accepting a settlement for only out-of-pocket losses, clearly not only jeopardizing the conciliation process but ultimately increasing the volume of litigation in the courts. 550 F.2d at 841. We agree that the introduction of damages for pain and suffering and of punitive damages would be a serious impediment to administrative conciliation, and would thereby thwart the Congressional intent evidenced by the ADEA remedial scheme.

B. The Legislative History and the 1978 Amendments

Other than by reference to the FLSA as noted above, the legislative history of the passage of the ADEA is not particularly illuminating. In 1978, however, the Act was amended. In the process of endorsing the correctness of the *Lorillard* decision, the Congressional Conference Committee considered the damages provisions of the Act. That report, which represents the "considered and collective understanding of those Congressmen involved in drafting and studying [the] proposed legislation," *Zuber*

*v. Allen*, 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969), stated:

Under section 7(b), which incorporates the remedial scheme of sections 11(b), 16 and 17 of the FLSA, "amounts owing" contemplates two elements: First, it includes items of pecuniary or economic loss such as wages, fringe, and other job-related benefits. Second, it includes liquidated damages (calculated as an amount equal to the pecuniary loss) which compensate the aggrieved party for nonpecuniary losses arising out of a willful violation of the ADEA.

The Supreme Court recently ruled that a plaintiff is entitled to a jury trial in ADEA actions for lost wages, but it did not decide whether there is a right to jury trial on a claim for liquidated damages *Lorillard v. Pons*, [434 U.S. 575] 98 S.Ct. 866 [55 L.Ed.2d 40] (1978). Because liquidated damages are in the nature of legal relief, it is manifest that a party is entitled to have the factual issues underlying such a claim decided by a jury. The ADEA as amended by this act does not provide remedies of a punitive nature. The conferees therefore agree to permit a jury trial on the factual issues underlying a claim for liquidated damages because the Supreme Court has made clear that an award of liquidated damages under the FLSA is not a penalty but rather is available in order to provide full compensatory relief for losses that are "too obscure and difficult of proof for estimate other than by liquidated damages" *Overnight Transportation Company v. Missel*, 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682 (1942).

House Conf.Rep.No. 95–950, 95th Cong., 2d Sess. 13–14, *reprinted in* [1978] U.S.Code Cong. & Ad.News 528, 535 (footnote omitted). This language, and the fact that the framers of the amendment can be presumed to have been aware of the *Rogers* and *Dean* decisions rejecting punitive and pain and suffering damages, is highly persuasive, if not dispositive, in determining the purpose of Congress to disallow such damages.

Therefore, in light of the language of the Act, the statutory context, and the legisla-

tive purpose as expressed in the remedial scheme and legislative history, we find, in accord with the overwhelming weight of authority, that punitive damages and damages for pain and suffering are not available under the ADEA. We find, therefore, that the district court properly concluded that it had erred in instructing the jury and in permitting the admission of evidence on the availability of such damages. The order of the district court granting a new trial is therefore affirmed and the cause is remanded for further proceedings. Because of the somewhat unusual circumstances of this case, Circuit Rule 18 shall not be applicable on remand.

Affirmed.