Douglas W. CHAMBERS, Plaintiff,

v.

EUROPEAN AMERICAN BANK AND TRUST CO.; European American Banking Corporation; the Incentive Savings Plan Committee of European American Bank and Trust Co. and European American Banking Corp.; the Employee Benefits Committee of European American Banking Corp.; the Pension Plan Committee of European American Bank and Trust Company and European American Banking Corp.; and King F. Lowe, Harry E. Ekblom, Francis Russo, Jr., and Donald A. Crowley, individually and as agents of European American Bank and Trust Co., Defendants.

No. 84 CV 285.

United States District Court,
E.D. New York.

Jan. 21, 1985.

Pelletreau & Pelletreau by John J. Hart, Patchogue, N.Y., for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn by Michael A. Cardozo, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiff filed the present suit against his former employer, European American Bank and Trust and European American Bank Corporation, collectively known as "EAB,"[1] alleging that EAB, by discharging him, had violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, that EAB, by withholding from him some $4,800 of EAB contributions to his EAB Incentive Savings Plan ("ISP") account, had violated certain procedural requirements of the Employment Retirement Security Act of 1974 ("ERISA"), and that EAB, both by discharging him and withholding this disputed amount, had violated several aspects of New York State contract and tort law. In response, defendant EAB has moved for summary judgment on the grounds that plaintiff's ADEA claim was untimely filed and that he failed to exhaust his internal review remedies before bringing his alleged ERISA violation to a federal court. Defendant EAB has also moved for summary judgment against all plaintiff's State contract and tort claims.

As will be set forth, this Court finds that summary judgment may be granted in favor of the defendant concerning plaintiff's claims resting on federal law. Having decided that there are no justiciable federal claims, this Court has no jurisdiction to decide plaintiff's pendent State law claims and plaintiff's claim is hereby dismissed without prejudice to any State claims he may have.

## FACTS

In February of 1977, plaintiff, a resident of New York, was hired by EAB following discussions with EAB's Executive Vice President, H. Newman Marsh. Plaintiff's Affidavit in Opposition to Defendant's Motion, ¶¶ 6, 7 [hereinafter cited as Pl.Aff.]; Transcript of Plaintiff's Deposition, Defendant's Ex. 2, pp. 50–57 [hereinafter cited as Pl.Dep.].

EAB is a commercial bank which has its headquarters in New York and over 90 branches in the New York Metropolitan Area. Pl. Amended Complaint ¶¶ 6, 7 [hereinafter cited as Comp.]; Mykolyn Aff., pp. 2–3.

At the time he started work at EAB, plaintiff was 56 years old, his birthdate being May 7, 1920. Pl. Attny. Hart Aff.Ex. I.

Plaintiff claims that the reason he was "induced" to leave his former position at the Bank of New York to join EAB was because Mr. Marsh had told him he would be eligible for EAB's pension plan if he were to stay on until the age of 65, whereas at the Bank of New York he had no such possibility of attaining a pension. Pl.Aff. ¶¶ 7, 8, 11. Before he went to work at EAB, plaintiff states that he "did not ask for any written materials on employee ben-

1. As may be noted from the caption in this case, plaintiff has joined as defendants more than merely the European American Bank and Trust Company and the European American Banking Corporation which is known collectively as EAB. The additional corporations and committees named, e.g., the Incentive Savings Plan (ISP) Committee, et al., are all in fact under the aegis of some aspect of the collective entity "EAB". The other named defendants, King F. Lowe, Harry E. Ekblom, Francis Russo, Jr., and Donald A. Crowley, are being sued in their capacity as agents of EAB and as individuals. Since the same federal claims are raised by plaintiff against all of the above, and they are all apparently represented by the same counsel, we have for the sake of clarity and simplicity chosen to refer to all these named parties as the "defendant" or even more simply as "EAB".

efits" because he considered his conversations with Mr. Marsh to be a "gentlemen's agreement" and "relied on his representation." *Id.* ¶ 10.

Moreover, both before plaintiff started work at EAB and after having begun work there, he admits that he never received any written employment contract. Pl.Dep. pp. 76, 83–84. Plaintiff admits that he was told by Mr. Marsh that his first six months were to be on a trial basis and that a statement to this effect appeared on the employment application which he signed. Pl.Aff. ¶ 11.

In plaintiff's brief, he argues that he believed after this trial period was over, his employment would be secure and that he could not be dismissed without cause. Indeed, it appears that plaintiff was warmly welcomed at EAB, and while there, received excellent job evaluations, which in all likelihood explains his "shock" when he was let go apparently without cause. Pl. Aff.Exs. A, D, E, F–1–4; Pl.Dep. pp. 123–28.

In sum, despite the absence of any written assurances or a written employment contract, plaintiff believed he had such a contract and expected he could work until 65 or later when he would be eligible for a pension. Pl.Aff. ¶ 12; Pl.Dep. pp. 89–99.

In his position at EAB in charge of services to savings and thrift institutions, plaintiff was responsible for supervising and hiring employees in his section. Pl. Dep. pp. 104–07. In his deposition, he stated that he was aware that he could not discriminate on the basis of age in his hiring practices and that he had gained this awareness from his readings of common business periodicals, which had given age discrimination "so much publicity." *Id.* at 115. However, plaintiff denied in his deposition that he had ever seen any of the ADEA posters concerning the illegality of age discrimination which EAB was required by law to post in areas frequented by employees, although he admits to having passed through these areas where the posters were allegedly hanging. *Id.* at 113–14, 117–21, 245–48.

Defendant submitted an affidavit by its Affirmative Action Officer stating that it has been EAB's policy since 1976 to have these posters hung in places like the personnel offices, the employee cafeterias, and the employee coffee rooms, and further, that since 1977, EAB's auditing department had checked to see that these ADEA posters were up as part of the inspection it conducts of each branch office every 12 to 18 months. Mykolyn Aff. pp. 1–3; Def.Ex. 5 (copies of audits conducted from 1976– Aug. 1982 showing that ADEA posters, among others, were displayed).

Plaintiff submitted an affidavit by a former employee of EAB who had also been plaintiff's secretary, stating that when she left EAB in May of 1983, she had never seen such posters. Cruz Aff. p. 2.

On August 2, 1982, plaintiff's supervisor, Frank Russo, told him that because of the distressed economic conditions in the savings and thrift sector, EAB was curtailing its marketing efforts in this area and as a consequence, his position was being eliminated. Pl.Aff. ¶ 19; Pl.Dep. pp. 123–28. Plaintiff contends that manpower in his division was subsequently not curtailed and further claims that his job responsibilities were assumed by two men who were 40 years old or younger. Pl.Aff. ¶¶ 24, 25. It might be noted, however, that according to Mr. Russo's affidavit, submitted with plaintiff's attorney Hart's affidavit as Exhibit H–1, it appears that plaintiff's section had been scaled down because now it only has one person soliciting business whereas before it had two.

On August 2 and again on August 3, 1982, plaintiff was told that although he had no further duties at EAB, he would receive his full salary and be eligible for employee benefits for the following nine months, the final date for his compensation and benefits would be April 30, 1983. Pl. Dep. pp. 130–38. These discussions were confirmed by Mr. Crowley, a Senior Vice President at EAB. Comp.Ex. C–1, C–2. Plaintiff asserts that because of his financial responsibilities, he "accepted Russo's terms under duress and threat of loss of

salary and benefits." Pl.Aff. ¶ 20. He further asserts that Mr. Crowley told him that if he were to go to work for a competitor of EAB, he would jeopardize his salary and benefit arrangement. Pl.Aff. ¶ 21; Pl.Dep. pp. 161–62. As a consequence of this conversation, plaintiff further asserts that he "did nothing during this period [*i.e.*, August 1982-April 1983] because I was afraid of loss of salary and benefits." Pl.Aff. ¶ 21. It may be noted here, however, that plaintiff admitted that he never discussed with Mr. Crowley what would happen if he were to sue the Bank. Pl.Dep. p. 162.

Before plaintiff left EAB, he claims that Mr. Crowley assured him that he would receive all of the Bank's contributions to his Incentive Savings Plan ("ISP") account. Pl.Aff. ¶ 21; Pl.Dep. p. 127–28. However, on March 7, 1983, EAB notified him that his right to the Bank's contributions to his savings made after January 1980 had not vested; thus, he was entitled to receive and did receive $31,757.38 consisting of all his savings and the Bank's contributions made to his account before 1980, but he was not entitled to the $4,852.34 worth of EAB contributions made after 1980. Comp.Ex. D–2. By a letter, dated October 6, 1983, plaintiff's attorney returned EAB's check for $31,757.38. *Id.* Ex.F.

Although the general rule concerning the ISP was that the right to receive EAB contributions would not vest until three years after EAB had made them, plaintiff believes that he falls within one of the EAB's stated exceptions which permit 100% vesting of rights to the Bank's contributions when an employee is terminated as a result of a "reduction in force, or any other involuntary termination without cause." Comp.Ex. D–1. In a letter, dated May 3, 1983, following up his phone inquiries, plaintiff asked Mr. Timoney, a manager of Employee Benefits at EAB, to explain why his discharge did not fall within this stated exception. Comp.Ex. E–1; Def.Ex. 9. Plaintiff repeated this request for an explanation by letters, dated June 7 and July 3 of 1983. Comp.Ex. E–2, E–3; Def. Exs. 10, 11.

Mr. Timoney claims that he responded to plaintiff's request by phone "on several occasions" in order to explain to him why he was not eligible for the EAB contributions made after 1980 and told him he could appeal the denial of his claim to the Employee Benefits Committee. Timoney Aff. ¶ 8. Mr. Timoney also claims that a letter plaintiff received in May of 1984 essentially reiterates and confirms in writing the explanations he had given to plaintiff over the phone. *Id.* ¶ 11.

This letter stated that the broad language regarding the 100% vesting exception had been interpreted by the Employee Benefits Committee to apply only to two specific instances of employee discharge: one instance would occur when the Bank "initiates a specific program which results in an individual's transfer to a nonparticipating affiliate or Shareholder Bank"; the other instance would arise "when the Company [*i.e.*, EAB], through a specific program of organizational restructuring or budgetary control, eliminates a number of positions." Def.Ex. 12; Pl.Aff.Ex. H–4. The letter concluded that since only plaintiff's position was eliminated and that he was not one of a "number of positions" being eliminated, he did not fall within these two instances in which the exception applied. *Id.*

The letter further stated that it would behoove plaintiff to submit a formal appeal from his claim's denial within 60 days after the receipt of that letter, despite the Committee's belief that it had already satisfied plaintiff's request for an explanation the year before and that he had not yet in its view submitted a formal appeal. *Id.*

By a letter, dated June 11, 1984, plaintiff informed the Committee that it was his position that the Committee's failure to reconsider his initial request of May 3, 1983, for an explanation was "already a year late." Def.Ex. 13.

In addition to EAB's Employee Benefits Committee's failure to treat his request for an explanation of his claim's denial as a formal appeal, plaintiff also alleges that Mr. Timoney, on behalf of the Employee

Benefits section, failed to send him copies of the ISP plan and trust within the 30-day period within which such a request should be responded to according to Section 502(c) of ERISA, 29 U.S.C. § 1132(c). Mr. Timoney claims that initially he had directed an assistant to send copies of the ISP plan and trust to plaintiff; upon later learning that plaintiff had not yet received these materials, he made sure copies were sent. Timoney Aff. ¶¶ 8–10. Plaintiff alleges that he did not receive these copies until 42 days after the initial 30-day period when he made his first request [*i.e.,* May 3, 1983] had elapsed. Comp. ¶ 88. Under Section 502(c) of ERISA, a court has discretion to hold an administrator, such as Mr. Timoney, personally liable, up to $100.00 a day, for each day that elapses after the initial 30-day period within which he is supposed to respond. Because 42 days allegedly elapsed before plaintiff received copies of the ISP plan and trust, plaintiff has asked that he be awarded $4,200.00 as relief for this delay. Comp. ¶ 90.

At the time he made his three requests for an explanation as to why he did not qualify for the 100% vesting exception, plaintiff states that he was aware that the EAB Employee Benefit Program manual provided that responses to requests for review were to be made within 90 days. Pl. Aff. ¶ 22. By plaintiff's calculation, 90 days after his first request was August 3, 1983. *Id.* Two weeks later he communicated with his present counsel. *Id.* On September 26, 1983, a Notice of Intent to Sue was filed with the Secretary of the Department of Labor on the grounds that EAB had violated the ADEA by unlawfully discharging him solely because of his age. Comp.Ex. B–1.

### DISCUSSION

Defendant asserts, and plaintiff disagrees, that sufficient discovery has been had to permit this Court to rule on defendant's summary judgment motion. As will be discussed, this Court finds that the facts which pertain to whether plaintiff's ADEA claim was timely filed are not in dispute;[2] similarly this Court finds that the facts which pertain to whether plaintiff has exhausted his internal review procedures before his ERISA violation can be entertained, are not in dispute. Thus, the only two legal issues the Court must decide are: *first,* whether, given the legal definition of the date of discharge, there are any facts which permit the Court to find that there has been an "equitable tolling" of the 300-day period within which ADEA claims must be filed; and *second,* whether, given case law guidelines, there are any facts which permit this Court to exercise the discretion given it under ERISA and to award plaintiff an amount of $4,200 or less as relief for his alleged failure to receive copies of the ISP plan and trust.

### A. *Untimeliness of ADEA Filing*

Under 29 U.S.C. § 626(d)(2), a charge of age discrimination in employment, sometimes referred to as a notice of intent to sue, must be filed before the EEOC, or, as in this case, before the Secretary of Labor who then refers it to the EEOC, within 300 days of the alleged unlawful practice.

In the present case, if the starting date of the time period on which the "alleged unlawful practice" occurred is August 2, 1982, the date of his notice of discharge from his duties as an employee, then his September 26, 1983 filing is untimely.

If, on the other hand, the time period for filing were to be computed from the date his employer administratively terminated his compensation and benefits, plaintiff's September 26, 1983 filing would then be timely. The latter construction, although more appealing on its face, must, however, be rejected as a matter of law.

---

**2.** The only issues as to which plaintiff argues that there has not been sufficient discovery and that defendant has allegedly not been as forthcoming in materials as plaintiff desired, concern matters (such as evidence which might

tend to show a pattern of discrimination against older EAB employees) that this Court would only need to address in the event it were to have found the plaintiff's ADEA claim was timely filed.

Under Congressional Acts similar to the ADEA, involving statutorily created causes of action to redress various forms of discrimination, the Supreme Court has made it quite clear that the time for filing a discrimination claim begins to run from the time of the discriminatory act, that is, when the employee is notified of the decision to relieve him from his employment responsibilities and discharge him from his duties. *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1982) (action under 42 U.S.C. § 1983); *Delaware College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (action under Title VII).

In *Ricks*, the Court ruled that the alleged illegal act, racial discrimination in the denial of tenure, was the date on which the applicable limitations period began to run, rather than the date, roughly one year later, on which his employment contract expired. *Ricks*, at 259, 101 S.Ct. at 504.

Following *Ricks*, the Court, in *Chardon*, ruled that the date on which the respondents were notified that a "final decision had been made to terminate their appointments", was the point at which the alleged illegal act occurred; the "fact that they were afforded reasonable notice cannot extend the period within which suit must be filed." *Chardon*, at 8, 102 S.Ct. at 29.

In Circuit Court cases construing the limitations period for filing under the ADEA, the date on which the employee has been notified of his discharge from duties has been held to be the date on which the 300-day period begins to run, irrespective of whether the employee continued to receive a salary for several more months as severance pay. *See, e.g., Naton v. Bank of California*, 649 F.2d 691 (9th Cir.1981); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). In *Naton*, the Ninth Circuit held "that when unequivocal notice of termination and the last day of work coincide, the alleged unlawful practice occurs on that date." 649 F.2d at 695. In reaching this holding, the *Naton* Court explicitly stated that it did so "[f]or the reasons discussed in *Bon-*

*ham." Id.* The Third Circuit in *Bonham* found in favor of the rule expressly adopted in *Naton* by expressing its "disfavor" for a rule which focused on the date of the termination of economic benefits because such a rule "penalizes a company for giving an employee periodic severance pay or other extended benefits after the relationship has terminated rather than severing all ties when the employee is let go." 569 F.2d at 191–92.

In the present case, this Court finds that there is no dispute between the parties that the date on which plaintiff was notified of his discharge from his responsibilities and duties as an EAB employee was August 2, 1982, which was subsequently confirmed in writings which are also uncontested. This Court further finds that the reasons set forth in *Naton* and *Bonham*, discussed *supra*, are persuasive enough to decide that EAB should not be penalized for providing plaintiff nine months severance pay; and, therefore, declines to hold that April 30, 1983, was the date from which the alleged illegal practice ran.

Finally, in keeping with the ruling in *Naton*, discussed *supra*, this Court finds that since the plaintiff's last day of work coincided with the undisputed notice of his discharge, then August 2, 1982 should be the date from which the timeliness of plaintiff's filing is measured. By this measure, this Court feels it must hold that as a matter of law, plaintiff's September 26, 1983 filing was untimely.

B. *Considerations For Equitable Tolling of the 300-Day ADEA Filing Do Not Apply*

■ Arguing in the alternative, plaintiff asserts that even if this Court favors the August 2, 1982 date, then this Court should consider this a proper case for an equitable tolling of the ADEA's 300-day filing requirement. Plaintiff, in support of this argument, then quotes at length from *Coke v. General Adjustment Bureau, Inc.*, a Fifth Circuit *en banc* decision which both surveys and joins the apparent federal trend towards interpretations of the

ADEA's filing requirements as being more analogous to statutes of limitations, and hence subject to equitable tolling, and away from construing its filing requirement as a jurisdictional predicate, the failure to comply with which deprives the court of subject matter jurisdiction, and hence, leaves the court with no power to determine whether time might be tolled for some equitable reason. 640 F.2d 584, 587–95 (5th Cir.1981) (*en banc*).

Indeed, despite plaintiff's promptings, this Court is cognizant of the Fifth Circuit's scholarly review of 1981, as well as the more recent developments in our own Circuit, *e.g., Johnson v. AL Tech Specialties Steel Corp.*, 731 F.2d 143 (2d Cir.1984) (Title VII), which confirm the Fifth Circuit's prediction that our Circuit is "leaning toward the developing law [*i.e.*, trend] favoring equitable tolling." *Coke*, 640 F.2d at 590. However, as was underscored in *Johnson*, a filing rule may not necessarily be "a jurisdictional predicate", but, "... 'in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day.' *Rice v. New England College*, 676 F.2d 9, 11 (1st Cir.1982)." 731 F.2d at 146. Thus, mindful of our Circuit's directions, we turn now to consider whether plaintiff's case presents any of these so-called "recognized equitable considerations."

On the basis of cases such as *Skoglund v. Singer*, 403 F.Supp. 797 (D.N.H.1975), which permit a tolling where the employer failed to post ADEA notices, plaintiff at first glance has at least an issue of fact as to whether EAB had these ADEA posters exhibited at their offices. But, even where a court in our own Circuit has been willing to agree that "factual questions exist with respect to defendant's compliance with the posting requirements," it has still held that "these questions need not be resolved," where the plaintiff can be found to "possess actual knowledge of his ADEA rights from sources other than posters." *Draeger v. Jockey Intern., Inc.*, 583 F.Supp. 570, 571 (S.D.N.Y.1984). As was the case in *Draeger*, plaintiff in the present suit has admitted in his deposition that he was aware that it was unlawful to discriminate on the basis of age in employment practices from his general reading of business publications and in his own role as a manager of employees. *See also Nielsen v. Western Electric Co.*, 603 F.2d 741, 744 (8th Cir. 1979) (Because there were "sufficient facts in the record from which [a] trial court could conclude that plaintiff was generally aware of his cause of action at the time he was demoted," it upheld the lower court's refusal to toll the filing requirement.).

Even assuming *arguendo* that the plaintiff in the present case had not admitted his awareness that age discrimination was illegal, his asserted failure to see any of the ADEA notices (which EAB alleges were posted in conspicuous places in all of its 90-odd New York area branches, some of which plaintiff admits to have frequented, and which EAB's internal audits, apparently conducted in the normal course of business, show that ADEA notices were posted) is still not enough to permit this Court to find in favor of an equitable tolling of the filing requirement. *See, e.g., Hrzenak v. White-Westinghouse*, 682 F.2d 714, 718–19 (8th Cir.1982) (employee's assertion that he did not see the ADEA notices, standing alone, is not a sufficient reason for tolling). It might be further noted that the asserted failure to see ADEA notices which were allegedly posted, is not a bar to a court's issuance of summary judgment. *See, e.g., Posey v. Skyline Corp.*, 702 F.2d 102, 103–04 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *Keitz v. Lever Bros. Co.*, 563 F.Supp. 230, 235 (N.D.Ind.1983); *Downie v. Electric Boat Div.*, 504 F.Supp. 1082, 1086 (D.Conn.1980).

Plaintiff cites several other cases in which certain equitable considerations permitted tolling. Although these cases are clearly distinguishable from the present case, we take time to briefly note the ways in which they are.

For example, in *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir.1976), *aff'd by an equally divided Court*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977), the Court

allowed a tolling where the plaintiff had communicated with an office of the Department of Labor regarding her claim and her employer was already on notice that she intended to pursue her claim; in the present case, neither of these instances exist.

In *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975), the Court indicated it would permit a tolling if, on remand, it were determined that a person similarly situated to plaintiff "with a prudent regard for his rights would have discovered the discrimination in the absence of misleading statements or concealment on the part of the defendant." *Id.* at 931. *Reeb* is inapposite here because plaintiff admits to having suspected that age discrimination was involved in the decision to discharge him and he does not allege that EAB's actions kept him from learning that EAB had moved two younger men into his section, allegedly replacing him.

The third case plaintiff cites to support a finding of an equitable consideration is *Coke v. General Adjustment Bureau*, 640 F.2d 584 (5th Cir.1981), in which the employer allegedly promised the plaintiff several times within the statutory filing period that he would rescind the alleged discriminatory demotion, but never did so; needless to say, such promises to reinstate the plaintiff in the present case were not alleged.

The principle of equitable tolling has also been accepted where on the face of the complaint, plaintiff has alleged facts which, if proved, indicate that defendant induced plaintiff to accept early retirement and to forbear from bringing suit in exchange for certain promises of alternative employment. *Ott v. Midland-Ross Corp.*, 523 F.2d 1367 (6th Cir.1975). Similar facts were not alleged to have occurred in the present case. In fact, plaintiff, in the present case, admitted that he never discussed with EAB officers what might occur were he to sue, nor apparently did they instruct him to forbear from doing so. *Cf. Fulton v. NCR Corp.*, 472 F.Supp. 377, 385

(W.D.Va.1979) (no equitable grounds for tolling).

Finally, plaintiff argues that his fear of losing his severance benefits poses an equitable consideration that should permit this Court to toll the time for filing until after he no longer feared the loss of his benefits. In a similar vein, he argues that he feared looking for work with a competitor of EAB because he feared jeopardizing these payments. While this Court is sensitive to the precarious financial position in which plaintiff believed himself to be, and because of this "did nothing," we simply may not rule that an employer's provision of severance pay tolls the ADEA's filing period. We do not believe that as a matter of law the provision of severance pay is the type of "recognized equitable consideration" of which the Second Circuit, *inter alia*, would approve for the purposes of tolling. Indeed the Eighth Circuit, in *Kriegesmann v. Barry-Wehmiller Co.*, just recently rejected this argument as a reason for tolling. 739 F.2d 357 (8th Cir.1984). In that case, plaintiff had argued "that if he had filed a discrimination charge with EEOC, the employer may have retaliated by cutting his severance benefits or sabotaging his efforts to find a new job." *Id.* at 358. The Eighth Circuit in *Kriegesmann* cited its agreement with the reasons given by the Fourth Circuit in *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir. 1982). In *Price*, the Court wrote:

> The attempt to mitigate the harshness of a decision terminating an employee, without more, cannot give rise to an equitable estoppel. The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in a timely fashion is the consequence of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.

*Id.*

Turning to the present case, we find ourselves in agreement with the *Kriegesmann* and *Price* decisions and decide that the fear

of losing severance payments should not ordinarily create an equitable consideration sufficient to toll the ADEA filing period. Moreover, we find that plaintiff's employer took no steps towards plaintiff which, even when viewed in a light most favorable to plaintiff, may be construed as positive misconduct or unmistakably designed to cause plaintiff's delay in filing his charge.

Plaintiff has further contended that he had no inkling of any wrongdoing until May 3, 1983, when he learned that he would not receive EAB's contributions made after 1980 to his ISP account. To accept this argument would require this Court, in effect, to find that the illegal act of age discrimination occurred on the date he was told he would receive some $4,800 less than he expected to receive. This is untenable.

Having addressed instances in which courts have found equitable considerations sufficient for a tolling, we find that such considerations are insufficient in this case to justify a tolling, and so, we reconfirm our finding above, that August 2, 1982 was the date from which the ADEA 300-day filing must be measured.

## C. *ERISA Claims*

### 1. *Request For Imposition of Penalties For Delay in Sending Information*

■ Plaintiff seeks an award of the penalty authorized by Section 502(c) of ERISA, 29 U.S.C. § 1132(c), to be assessed against the administrator of EAB's Employee Benefit Committee for his failure or refusal to send plaintiff copies of the ISP plan and trust within 30 days after his initial request of May 3, 1983. Because these documents were allegedly not received by plaintiff until July 13, 1983, or 42 days after the 30-day period elapsed, he argues that EAB's administrator should be held personally liable for the maximum penalty of $100 for each day after the 30-day period lapsed, a total of $4,200.

Section 502(c) of ERISA, 29 U.S.C. § 1132(c), provides:

Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

This section, quoted above, both provides a time frame within which requests are to be responded to and holds an administrator personally subject to monetary fines if these requests are not acted upon. The information to be provided by a company's ERISA plan administrator is detailed in Sections 104(b)(4) and 105(a) of ERISA, 29 U.S.C. §§ 1024(b)(4), 1025(a). In the present case, EAB's ISP plan and trust are apparently the documents that fall within the scope of information to be provided.

Even assuming *arguendo* that plaintiff did in fact receive these documents 42 days late, and thus, a technical violation would exist, the statute does not "require" this Court to mechanically issue a sanction by multiplying the maximum per diem penalty by the number of days the documents were allegedly late in receipt. Indeed, as is readily discernible from the language of the statute the decision as to whether to impose a penalty and the amount of that penalty is clearly committed to the discretion of the court.

The weight of authority indicates that penalties are not imposed when a plaintiff has failed to demonstrate that his rights were harmed or otherwise prejudiced by the delay in his receipt of the information. *E.g., Paris v. Profit Sharing Plan, Etc.,* 637 F.2d 357, 362 (5th Cir.1981) (plaintiffs did not attempt to demonstrate prejudice); *Wesley v. Monsanto Co.,* 554 F.Supp. 93, 98 (E.D.Mo.1982), *aff'd,* 710 F.2d 490 (8th

Cir.1983) (no showing of prejudice); *Schlomchik v. Retirement Plan of Amalgamated Ins.*, 502 F.Supp. 240, 245 (E.D. Pa.1980), *aff'd*, 671 F.2d 496 (3d Cir.1981) (no indication of prejudice to plaintiff's rights); *Pollock v. Castrovinci*, 476 F.Supp. 606, 618 (S.D.N.Y.1979), *aff'd without opin.*, 622 F.2d 575 (2d Cir.1980) (no indication that plaintiff's rights were in any way prejudiced); *Adams v. Western Conference of Teamsters Pension Plan*, 484 F.Supp. 933, 935 (D.Utah 1979) (even if defendants failed to send one or more documents, plaintiff was not harmed by such failure).

This point alone would seem dispositive. Here, the plaintiff has not demonstrated that his ability to appeal EAB's denial has been in any way adversely affected. Even a year later, EAB has reaffirmed in writing his right formally to appeal his denial. Plaintiff, moreover, has not even indicated that he has been financially harmed by the delay in receiving the copies. Plaintiff does, however, attempt to make a bootstrap argument that his delay in receiving the copies, and knowing that EAB's Employee Benefits Manual provided 90 days to review his request to reconsider his denial (EAB still maintains that he has formally not done so), caused him to wait until two weeks after the 90-day period had lapsed to seek counsel for both his ERISA claim and his ADEA claim. But, as discussed previously, we already ruled that plaintiff's ADEA claim was untimely and that no equitable considerations exist to permit tolling.

Finally, we add that plaintiff has not even demonstrated bad faith or intentional delay on the part of defendant. Mr. Timoney's affidavit stated that once he was told that his previous alleged instruction to an assistant had not been carried out, he claims to have seen to it himself that copies were sent out. Thus, at most plaintiff's claim amounts to an allegation of nonfeasance, but not purposeful malfeasance. *See, e.g., Bonin v. American Airlines, Inc.*, 562 F.Supp. 896, 898 (N.D.Tex.1983).

In one case, *Lieske v. Morlock*, the Court decided penalties could be awarded; but in that case the defendant had submitted only unverified assertions that plaintiff had received the information and plaintiffs alleged that they had not received the information requested over the 1980–81 period. 570 F.Supp. 1426, 1430 (N.D.Ill.1983). By contrast, in the present case, plaintiff readily admits to having received the information requested and defendant submitted more than mere unverified assertions.

Thus, for the reasons outlined above, this Court feels it would be inappropriate and against the weight of authority to impose penalties in the instant case.

2. *Request For the Imposition of Penalties For Failure to Fully Explain and Review Denial*

In plaintiff's twelfth and thirteenth claims, a variety of demands are made. In the twelfth, he alleges that the failure to provide him with a written explanation or clarification of the reasons for the denial of his claim to the sum of over $4,800 of EAB contributions, a violation of Section 503 of ERISA, 29 U.S.C. § 1133, should entitle him to recover under Section 502(c) of ERISA, 29 U.S.C. § 1132(c), $100 per day from the date of his request until such time as he receives a sufficient explanation or the date of trial. Comp. ¶¶ 91–95.

Section 503 of ERISA, 29 U.S.C. § 1133, provides that "every employee benefit plan shall ... provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial." The language of Section 503 makes no reference to the plan administrator of Section 502(c); this latter section, as was detailed above, is directed at ensuring that an administrator respond to requests for information. The former section, Section 503, does not impose any time within which an explanation is to be produced; nor, more importantly, does it even authorize this Court to impose penalties for the failure to produce a written explanation. We pause to note here that the

record before us shows that plaintiff has received a lengthy written explanation, albeit in May of 1984, inviting him to appeal within 60 days of the receipt as well as an affidavit by an administrator of EAB's plan alleging that he explained to plaintiff several times over the phone the reason for the denial.

At this time, this Court properly may only suggest to the plaintiff that he should exhaust the internal administrative review procedures available to him, because this is what the regulations for ERISA as promulgated by the Secretary of Labor require. The regulation, pertaining to Section 503, provides that if plaintiff has failed to receive adequate notice of the denial of his claim under Section 503, then "... the claimant shall be permitted to proceed to the review stage," 29 C.F.R. § 2560.-503(e)(2); this "review stage" is the appeal procedure EAB has in place. Moreover, as far as this regulation is concerned, this Court is bound by that "venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Red Lion Broadcasting Co., Inc. v. F.C.C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969) (footnote with cites omitted).

Even assuming that this litigation has brought to light evidence of which plaintiff was unaware, but would be helpful to his claim, we still must defer to these regulations and ERISA's statutory schema, by directing plaintiff to appeal to his plan's committee to make the initial reassessment of his claim: "This is necessary to insure that the fiduciary [*i.e.,* the pension plan committee] retains the 'primary responsibility for claim processing' that Congress intended. *Challenger v. Local Union No. 1,* 619 F.2d 645, 649 (7th Cir.1980)." *Wolfe v. J.C. Penney Co., Inc.,* 710 F.2d 388, 394 (7th Cir.1983).

Turning now to plaintiff's thirteenth claim for EAB's failure to give him, *inter alia,* adequate notice of the denial of a portion of EAB contributions to his IPS account, clarify his rights, and afford him an opportunity for a full and fair review of his claim, should all entitle him to actual damages in an amount equal to the value of plaintiff's lost wages and benefits [over $150,000] and legal and equitable relief. Comp. ¶¶ 96–99, 100(H).

There is little in the record that would support such an enormous award of damages even when construing it in a light that is most favorable to the plaintiff, as we must on a motion for summary judgment. Plaintiff, here, at best, has demonstrated that he did not receive a written explanation of his claim's denial within a reasonable period. But, even so, this does not amount to an injury for which a court normally awards damages under ERISA. By way of illustration, we need only note that even where a plaintiff may have received *no* written explanation, technically a statutory violation, "... courts have held that the absence of [a showing of] prejudice removes the basis for an award of damages [cites omitted]." *Donaldson v. Hamburg Savings Bank,* 568 F.Supp. 897 (E.D.N.Y.1983).

While not wishing to dwell on this thirteenth claim, we fail to understand why plaintiff has sought relief in federal court at this time when the sheer volume of case law should have counseled him that we may not address the denial of his claim until he has exhausted his administrative remedies. Clearly, Congress's intent when it passed ERISA was to foster the growth of private pension and benefit plans with their own administrative review procedures; its intent was not to burden the courts with managing these programs. As was well summarized in an oft cited case:

An examination of the underlying ERISA policies, interpreted analogously to the development of federal law under LMRA § 301, leads the court to conclude that Congress intended a claimant to exhaust his inter-fund remedies before seeking federal court review.... First, Section 1133 of the Act specifically requires the establishment of claims procedures, and the Secretary of Labor, pursuant to 29 U.S.C. § 1135, has promulgated

extensive guidelines to implement these procedures. Much like the labor grievance system, this claim/appeal mechanism is designed to reduce frivolous claims, promote the consistent treatment of claims, and create a non-adversarial method of claims settlement. [Cite omitted.]

Tied to these inter-fund claims procedures was Congress' awareness of the potential costs of pension reform, and it sought to "strike a balance between providing meaningful reform and keeping costs within reasonable limits." [1974] U.S.Code & Admin.News, pp. 4670, 4682. Congress was particularly concerned with outlining a private insurance system that would operate efficiently, thereby increasing its acceptance and institution among American business. U.S.Code News, *supra.* If claimants were allowed to litigate the validity of their claims before a final trustee decision was rendered, the costs of dispute settlement would increase markedly for employers. *Taylor v. Bakery and Confectionary Union and Industry International Welfare Fund,* 455 F.Supp. 816, 818–19 (E.D.N.C. 1978); *see, e.g., accord: Kross v. Western Electric Co.,* 701 F.2d 1238, 1244 (7th Cir. 1983); *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980); *Weeks v. Coca-Cola Bottling Co.,* 491 F.Supp. 1312, 1314 (E.D. Ark.1980); *Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071, 1074 (E.D.Pa.1979). From the foregoing, it should be clear that federal courts must strictly impose the "exhaustion requirement" upon claims such as plaintiff's, here; to do otherwise would be to contravene the intent of the Congressional policies embodied in ERISA's schema.

As was written in *Lucas v. Warner & Swasey Co.,* and as is applicable in this case: "The issue here is not who was at fault throughout this whole misunderstanding but whether [plaintiff's] failure to exhaust internal remedies can be excused under any one of the court-created exceptions." 475 F.Supp. at 1075. In the present case, as in *Lucas,* there has been no showing, nor even allegation, that it would be futile to require exhaustion, nor has there been mention that to do so would incur irreparable harm; and thus, we may reasonably find that our plaintiff may not have his case heard here under one of these so-called exceptions.

Therefore, the Court concludes that it must dismiss plaintiff's twelfth and thirteenth claims. Plaintiff should be on notice that even if he does proceed to exhaust his inter-fund remedies, and still finds himself dissatisfied, this Court's power to review a final decision of EAB's Employee Benefits Committee is limited to a determination of whether its decision was "arbitrary and capricious." *E.g., Miles v. New York State Teamsters Conference, Etc.,* 698 F.2d 593, 599 (2d Cir.1983).

## CONCLUSION

Having decided that plaintiff's claims under ADEA and ERISA fail to amount to properly actionable federal claims as a matter of law, this Court is simultaneously divested of its jurisdiction over plaintiff's pendent State law claims. Summary judgment is awarded in favor of the defendants, for the reasons stated above, and the complaint is hereby dismissed.

SO ORDERED.